Batterson v. The State.

## BATTERSON v. THE STATE.

CRIMINAL LAW.—*Witness.*—*Child Under Ten Years of Age.*—The question, as to whether or not a child under ten years of age is capable of understanding the facts about which it is to be examined, is to be determined by the court in which such child is offered as a witness, upon the answers of the child to interrogatories put to it by the court.

SAME.—*Judicial Discretion.*—*Supreme Court.*—The determination of such question by the court will not be reviewed by the Supreme Court on appeal, except for a clear abuse of its discretion.

SAME.— *Misconduct of Juror.*—*Taking Notes of Evidence.*—The act of a juror in taking notes of the evidence being given is not misconduct sufficient to set aside the verdict, where he, upon being admonished by the court of the impropriety of his act, ceased taking notes.

SAME.—*Verdict.*—*Fixing Term of Imprisonment.*—The fact that the jury, in fixing upon the term of imprisonment to be suffered by the defendant, took the quotient arising from the division of the aggregate of the periods indicated by each juror by the number of jurors, as a proposition merely of the term of imprisonment, is not improper, if not done pursuant to a previous agreement to accept such quotient as such term.

SAME.—*Newly-Discovered Cumulative or Impeaching Evidence.*—A new trial will not be granted on the ground of newly-discovered evidence which is merely cumulative or impeaching.

SAME.—*Reasonable Doubt.*—*Supreme Court.*—Where, from the evidence, the Supreme Court, on appeal, is satisfied that a reasonable doubt of the guilt of the defendant manifestly exists, a judgment of conviction will be reversed.

From the St. Joseph Circuit Court.

*W. G. George*, for appellant.

*T. W. Woollen*, Attorney General, and *G. Ford*, Prosecuting Attorney, for the State.

PERKINS, J.—An indictment as follows was duly returned into the St. Joseph Circuit Court.

" The grand jurors for the county of St. Joseph, in the State of Indiana, good and lawful men, duly and legally empanelled, sworn and charged in the St. Joseph Circuit Court of said State, at the December term, 1878, to inquire into felonies and certain misdemeanors in and for the body of said county of St. Joseph, in the name and by the

authority of the State of Indiana, on their oath do present, that one John Batterson, late of said county, on the 23d day of November, A. D. 1878, at said county and State aforesaid, did then and there, in a rude, insolent and angry manner, unlawfully and feloniously touch one Sarah A. Mell, a woman child, then and there under twelve years of age, and did then and there unlawfully and feloniously have carnal knowledge of her, the said Sarah A. Mell, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

"GEORGE FORD, Prosecuting Attorney."

Answer, not guilty.

Wm. G. George, an attorney, was appointed to defend the accused, as a poor person.

The court made the following further entry:

"And it appearing that Doctors Levi J. Ham, Robert Harris, R. P. Barbour, Joel Harris, Thomas McDonald, Josephus Davis, James Dorward, L. Humphries and Daniel Dayton, have been subpœnaed as medical witnesses to testify as experts in this behalf. It is ordered by the court that each be allowed the regular witness fee provided by statute, and that the clerk of this court certify the same to the auditor of St. Joseph county for payment, and day is given."

A jury trial followed, in which the defendant was convicted and awarded, as punishment, twelve years in the state-prison.

A motion for a new trial was overruled, judgment rendered, and sentence pronounced thereon upon the verdict.

The error assigned on appeal to this court is, overruling the motion for a new trial.

The following are the grounds specified in the motion for a new trial:

1. Verdict not sustained by the evidence;

2. The permitting Sarah A. Mell to testify as a witness, over the objection of the defendant;

3. Misbehaviour of the jury;

4. Newly-discovered evidence.

We will consider last the first ground in the motion for a new trial.

We copy from the record the statement of the facts touching the admission of Sarah A. Mell to testify as a witness, and also the testimony she gave, as follows:

" Thereupon the plaintiff introduced as a witness Sarah A. Mell; to the introduction of which witness the defendant objected upon the ground of incompetency, she being under the age of ten years, and incapable of properly understanding the facts about which she was to be examined.

" Thereupon the court made of said Sarah A. Mell the following inquiries, and received answers as follows:

" 'What is your name?

" ' Sarah Mell.

" ' How old are you?

" ' Five years and a half.

" ' Do you know what it is to take an oath?

" ' Yes sir.

" 'Would it be incumbent on you to tell the truth if you are sworn?

" ' Yes, sir.

" 'Would it be wrong to tell a lie?

" ' Yes, sir.

" ' Do you know it is more incumbent on you to tell the truth when sworn in court than if you were not?

" ' Yes, sir.

" 'Do you know that you would be punished if you were to swear to a lie?

" ' Yes, sir.

" 'Who told you it was wrong to swear to a lie, and that you would be punished for it?

" ' My pa and my ma both told me so.'

" Thereupon the court ordered the said Sarah A. Mell to be sworn and examined as a witness; to which order and ruling of the court the defendant, at the time, duly objected and excepted, and does now object and except.

" Sarah A. Mell, being duly sworn, testified as follows, to wit: (She was questioned by Mr. Anderson thus:)

" 'What is your name?

" ' Sarah A. Mell.

" 'Where do you live? Do you know what town you live in?'

" The witness shook her head.

" 'Where does your father work?

" ' On the railroad.

" ' What is your father's name?

" 'Joel Mell.

" 'What is your mother's name?

" ' Lizzie Mell.

" ' Do you know Batterson?' (Pointing to the defendant.)

" ' Yes, sir.

" 'What is his name?

" ' John Batterson.

" 'Do you know of his being at your house a while ago?

" 'Yes, sir.

" 'When did you see him, in the night or in the morning?

" ' I didn't see him at all.

" ' Did you know of his being in bed with you?

" ' Yes, sir.

" ' Did he hurt you?

" ' Yes, sir.

" ' Did any one else hurt you, at all?

" ' Only just him; that's all.

" ' Did you tell your mother of it next morning?

" ' No, sir.

" ' Who, then?

" ' My aunt Em.

" ' Is she here?

" ' Yes, sir.

" ' Is that her over there?

" ' Yes, sir.

" ' Why didn't you tell your mother?'

" No answer.

" ' Is your own mother here? is this your mother?' (Pointing to Mrs. Mell.)

" ' Yes, sir; one of my mothers is dead.

" ' Did you tell this mother about it?

" ' No, sir.

" ' Why didn't you tell her? were you afraid?

" ' Yes, sir.

" ' How came you to tell your aunt Emily?

" ' I went over to her house.

" ' Who were you playing with?

" ' I wasn't playing at all.

" ' Had your aunt a little girl over there?

" ' Yes, sir; two little girls.

" ' What were their names?

" ' Lina and Birdie.

" ' Were they as big as you?

" ' Yes, sir; just the size.

" ' How did he hurt you?'

" No answer."

Here her examination ended. There was no cross-examination.

The statute on this subject, 2 R. S. 1876, p. 132, enacts, that " Persons insane at the time of examination, children under ten years of age and incapable of properly understanding the facts about which they are examined, * * * shall not in any case be competent witnesses, unless," etc.

A child under ten years of age is not absolutely incom-

petent to testify as a witness, but only when such child is incapable of properly understanding the facts, etc. And, whether a child under ten years of age is incapable of so understanding the facts, etc., is a question for the court in which the child is offered as a witness, and to be determined upon the answers of the child to such interrogatories as may be put to it by such court. 2 R. S. 1876, p. 133, notes. In this case, the court was satisfied of the competency of the child to testify. We can not say that the court erred in its ruling. It would require a case of manifest abuse of discretion to authorize this court to interfere.

The third ground, stated in the motion for a new trial, was misbehavior of the jury. It specifies two particulars wherein the misbehavior consisted :

1.   Taking notes during the trial by a juror ; and,

2.   Finding the verdict by chance.

The record contains this statement :

" And here the judge of the court, seeing a juror taking notes, said to the jury : ' It is improper for jurors, in the trial of a cause, to take notes of the evidence. The jury must depend only upon their memory.' And thereupon said juror immediately discarded his pencil and paper, and ceased taking notes or writing."

The other item of misbehavior is thus charged :

" That the length of time of imprisonment of the defendant in the penitentiary, as his punishment, was determined by adding together the several numbers of years named by the several jurors, dividing the aggregate by twelve, and making the quotient the verdict, as to the question of punishment."

Misconduct of the jury must be such, to justify the setting aside of a verdict therefor, as to raise a presumption that the defendant might have been injured by such misconduct. See *Cluck* v. *The State*, 40 Ind. 263. No such

presumption arises in the facts on this case. The only evidence relied on to sustain the second item of the charge of misbehavior is a paper found in the jury room, after the jury had left it, containing twelve numbers added together, and the sum of the addition divided by twelve, giving a quotient of twelve and one-half.

In *Dunn* v. *Hall*, 8 Blackf. 32, it is said : " The law is well settled that in actions for unliquidated damages, the jury may adopt the process resorted to in this case, to obtain a medium sum to be submitted as a proposition for a verdict; and it is equally well settled, that it must not be adopted pursuant to an agreement to be bound by its result. *Harvey* v. *Rickett*, 15 Johns. 87; *Dorr* v. *Fenno*, 12 Pick. 521." *Alexander* v. *Thomas*, 25 Ind. 268.

If we can infer that the paper was one showing the figuring of the jury in reference to a verdict as to the extent of punishment of the defendant in this case, we can not infer that there was any agreement to be bound by the result of such figuring.

The fourth ground specified in the motion for a new trial was newly-discovered evidence.

The alleged-newly discovered evidence was mostly cumulative or impeaching, and hence not a sufficient cause to justify the court in granting a new trial.

The following is one of the affidavits :

" Ella Willis, having been duly sworn, says, that she was, in the month of November, 1878, a resident of New Carlisle, in St. Joseph county, and State aforesaid; that, during her residence in New Carlisle, she became acquainted with Mrs. Elizabeth Mell, wife of J. J. Mell, the father of Sarah; that, in a conversation she had with Mrs. Mell, on or about the 18th day of November, 1878, Mrs. Mell stated to this affiant, in answer to an inquiry as to the health of her family, that her (Mrs. Mell's) family were all well, with the exception of the little girl, Sarah A. Mell, who

had trouble with her urinary organs, and was suffering severely."

This affidavit was duly signed and verified.

To show the materiality and importance of the facts stated in the affidavit, it will be necessary to give a brief statement of the facts of the case, as disclosed by the evidence:

Sarah A. Mell lived with her father and step-mother, in New Carlisle, St. Joseph county, Indiana. Her father worked on the railroad. On the 23d of November, 1878, about nine o'clock in the evening, Batterson, the appellant, a brakeman on the railroad, called at the house of Mell, the father of Sarah. He was told that he could stay all night, if he would sleep in the trundle-bed, with Sarah. Sarah was then asleep in it. Mell had no other bed except that occupied by himself and wife. Batterson slept in the trundle-bed with Sarah, which was close beside the bed in which Mell and his wife slept. Nothing was heard of Batterson and Sarah during the night; no outcry, though the forcing of a passage into so young a child, by a grown man, must have been attended with excruciating pain and suffering. Mell was awake and up once in the night. When he got up in the morning Batterson and Sarah were in bed awake, she lying on Batterson's arm. No marks of violence were visible on the body of Sarah. This was Sunday morning. Batterson got up; Mell asked him to stay to breakfast; he declined, and started to the depot. On Monday it was noticed that Sarah walked a little lame; also on Tuesday—Mell thought her feet hurt her, and got her a pair of shoes. She grew worse, and was confined to her bed some length of time. Batterson had, for some time previous, occasionally visited at Mell's house. Sarah made no complaint on Sunday or Monday. " On Tuesday," said her aunt Emily, " she made complaint to me. I examined her. I found her in a bad condition; sent her home," etc.

On Tuesday, the 26th of November, Drs. Harris and McDonald were called in, and examined Sarah, at her father's house; found, as they believed, laceration of the hymen, and, in fact, her private parts swollen, and thought there had been penetration. On subsequent visits they discovered gonorrhœa, as they took it to be. Several physicians visited the jail, and examined the exposed private parts of Batterson, some of whom swore that they showed slight indications of venereal disease, but the greater number of them swore that they did not.

The case, on the evidence, is this: On Saturday night, the 23d of November, Batterson slept with Sarah, under the circumstances above detailed. He had, therefore, the opportunity to violate her person, but nothing appeared tending to prove that he did so, till the Tuesday following, when, on examination, she appeared to be affected with venereal disease, and to have been sexually violated at some time and place, by a man. On inference, then, from the two facts, that Batterson had the opportunity, and that he possibly might have had venereal disease, the verdict against him must mainly have been rested.

In cases of this kind, the rule of law is, that the evidence must establish the guilt of the defendant beyond a reasonable doubt, to justify a verdict of guilty. It requires no argument to show that such was not the evidence in this case.

The judgment is reversed, and the cause remanded for a new trial, all of which is to be certified, and the prisoner to be returned from the prison, for trial, etc.