Johnny HOLLINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 55433.

Court of Criminal Appeals of Texas.

Oct. 11, 1978.

Ralph E. Hutchmacher, Craig M. Shivers, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Keno M. Henderson, Jr., Asst. Dist. Attys., Houston, for the State.

Before ONION, P. J., and DALLY and VOLLERS, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for burglary of a building. After the jury found the enhancement paragraphs of the indictment alleging two prior felony convictions were true, the court assessed appellant's punishment at life imprisonment. See V.T.C.A., Penal Code, § 12.42(d). On appeal we are confronted with a claim as to the invalidity of the enhancement portion of the indictment and a contention that jury note-taking was improperly permitted.

### I.

Initially, appellant urges the trial court "erred in failing to grant defendant's motion to quash the enhancement paragraphs of the indictment because the enhancement paragraphs were at a fatal variance with the proof."

Appellant directs our attention to two oral motions to quash urged during the trial on the merits, but neither is based on the foregoing contention. Thus, the matter urged on appeal was never presented to the trial court. Nothing is presented for review.

Further, and more importantly, we observe that if the proof failed to support the enhancement allegations the punishment could not be legally enhanced, but this would not be grounds to quash that portion of the indictment. The office of a motion to quash an indictment is normally addressed to the sufficiency of the allegations therein, and not to whether there may be or is a variance between the allegata and the probata.

## II.

 After reviewing and construing the argument submitted in support of the foregoing ground of error, we conclude that the stated ground of error is not the real thrust of appellant's argument. In Article 40.09, § 9, V.A.C.C.P., it is stated in part:

"... If the defendant includes in his brief arguments supporting a particular ground of error, they shall be construed with it in determining what point of objection is sought to be presented by such ground of error; and if the court, upon consideration of such ground of error in the light of arguments made in support thereof in the brief, can identify and understand such point of objection, the same shall be reviewed notwithstanding any generality, vagueness or any other technical defect that may exist in the language employed to set forth such ground of error."

The arguments advanced in appellant's brief under this ground of error are confusing and somewhat multifarious, but the real thrust of appellant's contention is that the allegations as to the prior convictions used for enhancement did not allege the particular courts in which said convictions occurred so as to enable him to take issue thereon, and to show, if possible, there was a mistake in identity or that there was no final formal conviction or the like. We do observe that the appellant did make an oral motion to quash the enhancement portion of the indictment on this basis late in the trial on the merits. We shall therefore consider, under the mandate of Article 40.-09, § 9, supra, appellant's contention.

The enhancement paragraphs (so designated in indictment) alleged:

"Before the commission of the offenses alleged in Counts One and Two on July 23, 1951, in Cause Nos. 64148 and 64601, in Harris County, Texas, the Defendant was convicted of the felony offenses of Attempted Burglary and Theft, respectively.

"Before the commission of the offenses alleged in Counts One and Two, and after the convictions in Cause Nos. 64148 and 64601 were final, the Defendant committed the felony of Unlawfully Breaking and Entering a Motor Vehicle and was convicted on April 14, 1959, in Cause No. 86566, in Harris County, Texas."

Count No. 2 was waived and abandoned by the State, and the jury found the appellant guilty of burglary as charged in Count No. 1. At the beginning of the penalty stage of the trial, upon the motion to quash being made, the State asked to delete from the allegations of the prior convictions those concerning the attempted burglary conviction. Thereafter, the court submitted to the jury the question of whether the appellant had been previously convicted of theft and breaking and entering a motor vehicle.

 It is well settled that it is not necessary to allege prior convictions for the purpose of the enhancement of punishment with the same particularity as must be used in charging the original offense. *Broughton v. State*, 148 Tex.Cr.R. 445, 188 S.W.2d 393 (1945); *Farris v. State*, 155 Tex.Cr. 261, 233 S.W.2d 856 (1950); *Tucker v. State*, 155 Tex.Cr.R. 304, 234 S.W.2d 877 (1950); *Bailey v. State*, 163 Tex.Cr.R. 459, 293 S.W.2d 649 (1956); *Jones v. State*, 164 Tex.Cr.R. 253, 298 S.W.2d 569 (1957); *Warden v. State*, 366 S.W.2d 786 (Tex.Cr.App.1963); *Cooper v. State*, 500 S.W.2d 837 (Tex.Cr.App.1973). See also 1 Branch's Ann.P.C., 2nd ed., § 697, p. 679.

Nevertheless, it has been held that in alleging prior convictions for enhancement definiteness and certainty are required in the State's pleadings. *Papageorge v. State*, 157 Tex.Cr.R. 119, 246 S.W.2d 880 (1952). This is so because an accused is entitled to proper notice of any prior conviction alleged for enhancement of punishment. *Rogers v. State*, 168 Tex.Cr.R. 306, 325 S.W.2d 697 (1959). In *Morman v. State*, 127 Tex.Cr.R. 264, 75 S.W.2d 886 (1934), this court wrote:

"The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question whether he is the convict named therein."

In *Childress v. State*, 134 Tex.Cr.R. 504, 116 S.W.2d 396 (1938), it was stated:

". . . It is true that the appellant has the right to be advised by averments in the indictment as to the records of the former convictions, and also the right to be guarded against the hazard of the use by the state on a subsequent occasion of a conviction that has theretofore been used to enhance the penalty. *Childress v. State*, 131 Tex.Cr.R. 487, 100 S.W.2d 102 . . . ."

In *Palmer v. State*, 128 Tex.Cr.R. 293, 81 S.W.2d 76, 79 (1934), this court quoted from 12 Tex.Jur.2d 795 and stated:

"This averment is necessary in order to give the accused notice that a greater penalty is to be sought than for a first offense, and to enable him to take issue thereon, and if possible show there is a mistake in identity, or that there was no final former conviction or the like."

It has been frequently held that in alleging a prior conviction for enhancement of punishment the allegations should include the court in which the conviction was obtained, the time of the conviction and the nature of the offense. *Neece v. State*, 62 Tex.Cr.R. 378, 137 S.W. 919 (1911); *Morman v. State, supra*; *Palmer v. State, supra*; *Childress v. State*, 131 Tex.Cr.R. 487, 100 S.W.2d 102 (1936); *Walker v. State*, 138 Tex.Cr.R. 230, 135 S.W.2d 498 (1940).[1]

In *Arce v. State*, 552 S.W.2d 163 (Tex.Cr. App.1977); *Prodon v. State*, 555 S.W.2d 451 (Tex.Cr.App.1977); and *Teamer v. State*, 557 S.W.2d 110 (Tex.Cr.App.1977), the indictments, like the one in the instant case, fail to allege the district courts in which the prior convictions occurred.[2] In *Arce, Prodon* and *Teamer* there were no motions to quash and in each case it was held that the failure to so allege could not be raised for the first time on appeal as fundamental error.

In the instant case there was a motion to quash the enhancement portion of the indictment since the district courts in which the prior felony convictions occurred were not named or designated.

The enhancement allegations do describe the prior convictions as being for felony offenses, giving the nature of the offense, the case numbers of the causes in Harris County in which the convictions were obtained and the dates of such convictions.

1. While it is better practice to also allege the style of the case in which the prior judgment of conviction was entered, the failure to so allege does not render the pleading fatally defective. *Riley v. State*, 162 Tex.Cr.R. 367, 285 S.W.2d 229 (1955); *Crume v. State*, 165 Tex.Cr.R. 555, 309 S.W.2d 241 (1958). In *Plessinger v. State*, 536 S.W.2d 380 (Tex.Cr.App.1976), the indictment alleged a prior Arizona conviction for enhancement of punishment, but in alleging the style of the case, the indictment stated the prior conviction was styled *"The State of Texas vs. Delbert Lorrain Plessinger, Jr."* Proof, of course, showed the style was *"State of Arizona vs. Delbert Lorrain Plessinger, Jr."* There was no objection as to the ground of error later raised on appeal as to the defect in the indictment. In *Plessinger* this court wrote:

"While the carelessness here involved is not to be condoned, we are unable to say that appellant has shown surprise or that he was misled to his prejudice. See *Burton v. State*, 493 S.W.2d 837 (Tex.Civ.App.1973); *Loud v. State*, 499 S.W.2d 295 (Tex.Cr.App.1973)."

To the extent that *Corley v. State*, 158 Tex. Cr.R. 207, 254 S.W.2d 394 (1953), was in conflict with the holding it was overruled. It must be kept in mind, however, that *Plessinger* and *Corley* involved variances between the allegations and the proof and did not concern the sufficiency of the allegations as to the prior convictions standing alone.

Further, it should be noted that it is not necessary to allege the dates of the commission of the prior offenses (resulting in convictions) which are used for enhancement of punishment. *Loud v. State, supra*; *Hernandez v. State*, 530 S.W.2d 563 (Tex.Cr.App.1975). Still further, it is not necessary to allege the dates on which the convictions became final so long as the proof at trial shows the necessary succession of offenses and final convictions. *Burton v. State, supra*; *Kessler v. State*, 514 S.W.2d 260 (Tex.Cr.App.1974). [Where a prior conviction is final on its face, the burden of showing the same not to be final is on the defendant. *Ashley v. State*, 527 S.W.2d 302 (Tex.Cr.App.1975).] And it is also noted that allegations that each offense was committed after a final conviction in the preceding case is sufficient for enhancement purposes. *Robinson v. State*, 163 Tex.Cr.R. 499, 293 S.W.2d 781 (1956); *Hernandez v. State, supra*; Branch's Ann.P.C., 3rd Ed., § 12.42, p. 598 (1974).

2. *Arce, Prodon* and *Teamer*, as well as the instant appeal, are all Harris County cases.

The allegations, in their own way, also state that each offense was committed after a final conviction in the preceding case. The allegations do not, however, mention the name or designation of any court. The State argues that since only the district court has jurisdiction of felonies, Article V, § 8, Texas Constitution, and all the prior convictions were alleged to have occurred in Harris County the appellant would have no difficulty in ascertaining the records of the prior convictions, particularly in light of the cause numbers given. The State calls attention to Article 199(11), V.A.C.S., as amended in 1963 which provides in part:

"In all suits, actions, or proceedings in said Courts, it shall be sufficient for the address or designation to be merely 'District Court of Harris County.'"

It appears to be the State's argument that while the above designation was not even alleged the same was clearly inferable from the allegations made.

The State notes that although appellant's counsel claimed at the time of the motion to quash he had been unable to locate the records of the prior convictions, he offered no proof of the same, and that the colloquy at the bench on an earlier motion to quash on another basis clearly indicated appellant personally was familiar with the records.

The State points out that such colloquy reveals appellant, acting as co-counsel with permission of the court, argued to the court that the prior convictions alleged had been previously used for enhancement of punishment in another case, giving the date of such trial, etc. The prosecutor responded that only one of the prior convictions alleged (Cause No. 86,566—breaking and entering a motor vehicle) had been previously used in another cause, but the conviction there obtained had to be set aside and that prior conviction thus had not been successfully used for enhancement and was available in the instant case. No proof or further

argument was offered, and the court overruled the motion to quash then made.[3]

We conclude, although not without difficulty, that the enhancement of punishment allegations are sufficient. The prior convictions were described as felonies, the exact nature of the offenses was given, the cause numbers in which the convictions were obtained and the dates of such convictions were set forth. Although the courts were not named, it was alleged that all convictions occurred in Harris County, and that each felony offense was committed after a final conviction in the preceding case. Since only district courts have jurisdiction of felony cases, the convictions alleged were all in the same county with the cause numbers stated, and given the particular circumstances of this case, the trial court did not err in overruling the motion to quash the enhancement portion of the indictment.

We conclude the appellant was not misled and that under the circumstances was given adequate notice by the allegations in the indictment.

Nothing in this holding, however, should be construed as the approval by this court of this type of pleading. The drafter of the enhancement allegations, although not required to use the same particularity in regards to a primary offense, should keep in mind that definiteness and certainty are required and the accused is always entitled to proper notice of any prior conviction alleged for enhancement of punishment, etc., as previously discussed.

Far too often it appears the drafter of the indictment, a member of the prosecution's team, concerns himself with lightening the prosecution's burden and alleges as little as possible to avoid variances between the allegations and the proof, clerical errors and other things which might affect effective prosecution. While these are legitimate concerns of the State,[4] the drafter

---

3. No ground of error is advanced on this basis.

4. Variance problems can present themselves during a trial where enhancement of punishment is sought. In *Goodale v. State*, 146 Tex. Cr.R. 568, 177 S.W.2d 211 (1944), it was held

reversible error where there was a variance in the date of the prior conviction alleged and the proof of the date of such conviction. Cf., however, *Baity v. State*, 455 S.W.2d 305 (Tex.Cr. App.1970). It has also been held that there is a fatal variance where one cause number of a

should never overlook the primary purpose of allegations relating to enhancement of punishment.

### III.

██ Next, appellant contends the trial court erred in not granting his motion for a mistrial upon discovery of jury misconduct, to-wit: the taking of notes and the discussing of the same during deliberations.

On the third morning during the guilt stage of the trial the court informed the jury that it had come to the court's attention that some jurors may have been taking notes. They were instructed not to take any further notes, if notes had been taken, that written notes were not to be used in the jury's deliberations nor disclosed to other members of the jury. The appellant asked to interrogate the jurors concerning note-taking, but the court denied such interrogation until the conclusion of the trial. When the trial ended, the appellant moved for a mistrial on the basis of the note-taking and it was denied. The jurors were then interrogated. Nine jurors stated they had not taken any notes and that notes were not used in their deliberations. The foreman Dutton and jurors White and Ernst testified they had taken notes until such time as the court had instructed them not to do so. Dutton, who had read his notes from the first two days of trial on the third morning, handed his notes to the bailiff following the court's instructions. White and Ernst testified they ceased note-taking upon the court's instructions, put them away and did not read them at all. The three note-taking jurors testified the notes were not referred to or used in any way during jury deliberations.

prior conviction is alleged and another cause number is proved. *Green v. State*, 153 Tex. Cr.R. 273, 219 S.W.2d 687 (1949). Cf., however, *McGill v. United States*, 10 F.2d 972 (5th Cir. 1926). Further, where there is a variance in the name and designation of the court in which the prior conviction was alleged to have occurred and the proof, a reversal will result. *Morman v. State*, 127 Tex.Cr.R. 264, 75 S.W.2d 886 (1934); *Corley v. State*, 158 Tex.Cr.R. 207, 254 S.W.2d 394 (1953); *Elton v. State*, 158 Tex.Cr.R. 11, 252 S.W.2d 700 (1952). See and

In *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141, 14 A.L.R.3d 818, the Tennessee Supreme Court indicated that at common law there was a general rule that jurors were not allowed to take any writing not under seal to the jury room for the reason that most jurors were unlettered men. The Court reasoned that out of this general rule came the rule that jurors were not allowed to take notes during the trial. However, in Buzard, Jury Note-Taking in Criminal Trials, 42 J.Crim.L. & Crim. 490 (1951), the author concludes that a common law origin cannot be perceived from the cases (footnote # 10, p. 491).

Nonetheless, there is a wide difference of opinion among the authorities in this country as to the propriety of jurors taking notes and their subsequent use in the jury room. 154 A.L.R. 876; 14 A.L.R.3d 831; 75 Am.Jur.2d, § 934, p. 795; 89 C.J.S. Trial § 456, p. 80; Buzard, Jury Note-Taking in Criminal Cases, 42 J.Crim.L. & Crim. 490–493 (1952); Note, 37 N.Car.L.Rev. 518 (1959); Note, 18 U.Pitt.L.Rev. 800 (1957); Petroff, The Practice of Jury Note Taking —Misconduct, Right, or Privilege?, 18 Okla. L.Rev. 125 (1965); 32 J.Am.Jud.Soc'y. 57–58 (1948).

In *State v. Ledet*, 298 So.2d 761 (La.1974), the Louisiana Supreme Court, speaking through Justice Albert Tate, observed that note-taking by jurors and reference to them during jury deliberations is either permissible or expressly authorized by statute or court rule in at least twenty-six American state jurisdictions and in the federal courts.[5] It was noted that the practice was

cf. *Bray v. State*, 531 S.W.2d 633 (Tex.Cr.App. 1976), and *Plessinger v. State*, 536 S.W.2d 380 (Tex.Cr.App.1976) (which overruled *Corley* to the extent of any conflict though *Plessinger* involved a variance in the style of the case alleged concerning the prior conviction and the proof).

5. At least nine states have enacted statutes which expressly authorize jurors to take notes in criminal cases. Cal.Pen.Code, § 1137; Idaho Code Ann., § 19–2203 (1947); Iowa Code, § 784.1 (1954); Minn.Stat.Ann., § 631.10

prohibited in only four states, including Louisiana, although most of the decisions in these states refused to reverse unless prejudice and gross misconduct were clearly shown.[6]

There is substantial body of authority which holds jurors may not take notes of the trial proceedings and a trial judge may forbid them doing so. The reasons behind the prohibition have been stated in several cases. In *United States v. Davis*, 103 F. 457 (C.C.W.D.Tenn.1900), it was written:

"... It gives the juror taking notes an undue influence in discussing the case when he appeals to his notes to settle conflicts of memory. Without corrupt purpose, his notes may be inaccurate, or meager or careless, and loosely deficient, partial, and altogether incomplete. With a corrupt purpose, they may be false in fact, entered for the purpose of misleading or deceiving his fellows when he comes to appeal to them. There is no protection against such dangers except to forbid the practice. ..."[7]

In *Cheek v. State*, 35 Ind. 492 (1871), the Indiana court observed the taking of notes "was well calculated to divert the attention of the jurors while they were busy, pencil or pen in hand, from the evidence, as it would naturally be progressing while such notes were being made. The juror is to register the evidence, as it is given, on the tablets of his memory, and not otherwise ... . The jury should not be allowed to take the evidence with them to their room, except in their memory. It can make no difference whether the notes are written by a juror or by someone else. Jurors would be too apt to rely on what might be imperfectly written, and thus make the case turn on a part only of the facts."[8]

In *Thornton v. Weaber*, 380 Pa. 590, 112 A.2d 344 (1955), in an action for wrongful death, where the trial judge invited the jurors to take notes, the making of notes was held reversible error. The state Supreme Court asserted that the writing of memoranda by jurors is not encouraged in the courts of Pennsylvania and generally is forbidden because by taking notes a juror emphasizes to himself and perhaps later to other jurors one feature of the case over other equally important features and thus a resulting distorted view may be gained of the whole picture which is before the jury

---

(1947); Mont.Rev.Codes Ann., § 94–7303 (1947); Nev.Rev.Stat., § 175.390 (1957); N.Y. Code Crim.Proc., § 426; N.D.Rev.Code, § 29–2204 (1943); Utah Code Ann., § 77–32–2 (1953). Louisiana has a statute that prohibits the use of juror's notes. La.C.Cr.P., Article 793. See *State v. Ledet*, 298 So.2d 761 (La. 1974). In Georgia it appears jurors are free to take notes during the trial more or less as a matter of right, even in the absence of a statute. See *Thomas v. State*, 90 Ga. 437, 16 S.E. 94 (1892); *Lilly v. Griffin*, 71 Ga. 535 (1883). A later case from the same jurisdiction seems, however, to adopt the position that it is discretionary with the trial court. *Vaughn v. State*, 17 Ga.App. 268, 86 S.E. 461 (1915).

In *State v. Ledet, supra*, the court held that the statutory policy of R.S. 15:470 (prohibiting impeachment of verdict by a juror) prevails over C.C.P., Article 793 (jurors should not take notes). The decision in *State v. Fortenberry*, 307 So.2d 296 (La.1975), adhered to the decision in *Ledet* regarding policy.

In *Ledet* juror Gros took notes, referred to them occasionally to verify his own memory and in one or two instances used the notes in deliberation to verify other jurors' recollection of testimony. After noting that discovery of a violation of the statute after the verdict was

not necessarily prejudicial and reversible error, the court wrote:

"... Nor are we here faced with a situation where the state encouraged an open violation, nor where the trial court refused over defense objection to prohibit compliance with this legislative direction, so that reversal is the only way to enforce this legislative mandate."

6. See *Thornton v. Weaber*, 380 Pa. 590, 112 A.2d 344 (1955); *Cheek v. State*, 35 Ind. 492 (1871); *Batterson v. State*, 63 Ind. 531 (1878); *Fischer v. Fischer*, 31 Wis.2d 293, 142 N.W.2d 857 (1966).

7. It has been also suggested that a juror may make copious notes at the commencement of the trial as the plaintiff or State presents the case, but as the novelty of note-taking wears off decreases his note-taking activities or ceases note-taking at all, resulting in notes taken into deliberations that are top heavy in favor of one party to the lawsuit.

8. For later Indiana cases holding note-taking discretionary with the trial court, see *Dudley v. State*, 263 N.E.2d 161, 164 (Ind.1970); *Gann v. State*, 330 N.E.2d 88 (Ind.1975).

for deliberation. The Court also observed that unless the juror taking notes is a skilled shorthand writer he is most likely to miss what is being said while he is trying to record what has already been heard. The Court added that a further criticism is that a juror hurriedly scribbling notes is apt to divert the attention of the other jurors and possibly also create the impression he is more alert and to be regarded as more informed than the other jurors who have not taken notes.

The Wisconsin Supreme Court has also apparently subscribed to the view that note-taking is improper. In *Fischer v. Fischer*, 31 Wis.2d 293, 142 N.W.2d 857 (1966), it was said that jurors should not in the ordinary case be permitted to take notes.

For other cases which do not commend the practice of note-taking, see *Gipson v. Commonwealth*, 133 Ky. 398, 118 S.W. 334 (1909).

Most authorities, however, take the view that the making and use of trial notes by the jury is not misconduct but is proper and may even be desirable where it is unattended by undue consumption of time.[9] 14 A.L. R.3d 831, 834; *Goodloe v. United States*, 88 App.D.C. 102, 188 F.2d 621 (1950), cert. den. 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619; *Toles v. United States*, 308 F.2d 590 (9th Cir. 1962), cert. den. 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66; *United States v. Carlisi*, 32 F.Supp. 479 (D.C.N.Y.1940); *United States v. Campbell*, 138 F.Supp. 344 (N.D. Iowa 1956); *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141 (1965). The courts which have held note-taking proper describe it as a legitimate aid to the memory which enables jurors to reach a more equitable verdict, and dismiss contrary considerations as anachronisms from times when few men were literate.

In *Davis Die Co. v. Beltzhoover Electric Co.*, 40 Ohio App. 308, 178 N.E. 418, 419 (1931), the court said:

"It is urged that the notes might be taken incorrectly and thus improperly influence the jurors in their deliberations. Certainly there would be as great danger of error upon the 'tablets of their memory' as upon the tablets in their hands. In the days when fewer men could read or write it might have been possible for one who could do so to use these abilities improperly. Today it is hardly likely that such a state of affairs would exist. While the stability of rule and precedent is desirable, it is not so important as to require inflexibility in the presence of changed conditions, indicating the necessity, or at least reason, for adaptation to modern conveniences and practices adopted by men in the conduct of the ordinary affairs of life."

In *United States v. Campbell, supra*, the Court wrote:

"In the opinions of some of the appellate courts which disapprove [of] the taking of notes by jurors, the view is expressed that where one or more of the jurors take notes they will in the event of disagreement in the jury room as to the evidence given by a certain witness or witnesses persuade the other members of the jury to accept their version of such testimony even though such version might be erroneous. In the days prior to the advent of court reporting, in the event of disagreement among the jurors as to certain testimony, there would not have been any satisfactory way of verifying what a witness or witnesses did actually testify. Since the advent of court reporting, when jurors get into a disagreement as to certain testimony, they can and do request that the testimony in question be read to them by the reporter."

In *United States v. Chiarella*, 184 F.2d 903, 907 (2nd Cir. 1950), the Court, speaking through Judge Learned Hand, said:

"The notion has at times been countenanced that jurors should not be allowed to take notes, on the theory that they

---

9. In *Denson v. Stanley*, 17 Ala.App. 198, 84 So. 770 (1919), the court held that the taking of notes by a juror was not objectionable so long

as it did not cause delay or undue consumption of time. See also 89 C.J.S. Trial, § 456, p. 80.

take on an undue importance when the jury deliberates. . . . The supposed dangers appear to us far-fetched, if not imaginary; but even if we are wrong, it has never been suggested that the judge must permit the practice; the question has always been whether he must forbid it. Moreover, it is at most a matter of discretion." [10]

The American Bar Association Standards for Criminal Justice Relating to Trial by Jury approves the taking and use of notes by jurors. Standard 4.2 provides:

"Jurors may take notes regarding the evidence presented to them and keep these notes with them when they retire for their deliberations. Such notes should be treated as confidential between the juror making them and his fellow jurors."

Under the Uniform Rules of Criminal Procedure, if note-taking by the jurors will likely assist them in their deliberations, the court may permit them to take notes under appropriate conditions and admonitions. The notes may be disclosed only to fellow jurors during deliberations. Unif.R. Crim.P., Rule 513(e).

It clearly appears that in the absence of statute the majority view in this country is that the matter of note-taking by jurors and their subsequent use during deliberations is left to the sound discretion of the trial court. Wharton's Criminal Law and Procedure, Vol. V, § 2112, p. 295; 89 C.J.S. Trial § 456, p. 80; *State v. Jackson*, 201 Kan. 795, 443 P.2d 279 (1968).

Strangely enough, it does not appear that this court has passed on the specific question of the propriety of the taking of notes by jurors in a criminal case in this state. This may be due to the fact that most criminal trial judges do not permit such note-taking. Suprisingly, the Supreme Court of Texas has not passed on the question either in civil cases. There are, however, several opinions by the various Courts of Civil Appeals, but they are not entirely harmonious and have not definitely answered the question but have found the practice harmless when the notes pertained to undisputed issues or where the notes were not held out to the other jurors as evidence. *Brooks v. Temple Lumber Co.*, 105 S.W.2d 386 (Tex.Civ.App.—Beaumont, 1937—no writ), some of the jurors, during their deliberations, went into the courtroom and made notes from the figures placed on the blackboard by one of the attorneys during jury argument. The jury used these figures in returning its verdict. Without discussing the propriety of note-taking, the court on appeal held that action of jurors was not such misconduct so as to warrant a new trial where there was no conflict in the evidence as to such figures and under the circumstances the appellants in the cases were not injured by the conduct of the jurors.

In *Commercial Music Co. v. Klag*, 288 S.W.2d 168 (Tex.Civ.App.—San Antonio, 1955—no writ), it was held not to be reversible error for the attorney for the appellee to hand to each juror a pencil and paper pad and suggest that the jurors make notes of this argument as they might desire and carry them into the jury room when they retired to deliberate. While the case was reversed for other reasons, the court said it would have been better for the attorney to have requested that the court have some court official furnish the supplies to the jury so that the attorney would not have been placed in the attitude of attempting to incur favor with the jury. However, the court added the mere fact the jurors were provided with pencils and pads so they

10. Those who argue in favor of the taking and use of juror's notes contend that judges and lawyers take notes so why shouldn't jurors? *Dudley v. State*, 263 N.E.2d 161 (Ind.1970); *Gann v. State*, 330 N.E.2d 88 (Ind.1975); *State v. Ledet, supra*, at p. 765, footnote 7. This argument overlooks the fact that judges and lawyers are legally trained when most jurors are not, that they are familiar with the elements of the criminal offense and evidence which may bear on these issues in a criminal case and their notes are taken to assist them in their roles in the judicial framework, which does not include being fact finders when a jury has been impaneled. When a dispute of evidence occurs, they are less likely to rely upon their notes than the official record made by the court reporter.

might make notes did not constitute reversible error. Here again, the propriety of note-taking was not discussed, the court seeking only to answer the contention that the attorney's action constituted reversible error.

In *Guest v. American Petrofina Co.*, 485 S.W.2d 926 (Tex.Civ.App.—Texarkana, 1972), the court frowned upon the taking of notes although the judgment was affirmed. There the court wrote:

> ". . . It was not conclusively shown that the use of the notes affected the verdict of the jury, but we quickly announce the admonition that the taking of notes into the jury room is to be frowned upon by the courts until such time as the Supreme Court prescribes a rule that all jurors may take notes during the trial and use them during their deliberations. As the testimony reflects in this case, only one person took notes, and it would be easy for such juror to influence the decision of other jurors if they thought his notes reflected a better recollection of the facts as they came from the witness stand than their personal memories."

A somewhat different view was taken in *Manges v. Willoughby*, 505 S.W.2d 379 (Tex.Civ.App.—San Antonio, 1974, writ ref'd. n. r. e.). There the court, speaking through then Chief Justice Barrow, found no prohibition in the Texas Rules of Civil Procedure against note-taking by jurors and no Texas authority holding such practice erroneous or even condemning it. The view was taken that such practice might be desirable in an accounting or other complicated suits, citing 89 C.J.S. Trial § 456. Trial judges were cautioned, however, that if they observe note-taking by jurors the jurors should be instructed that such notes are not evidence and if the jury should disagree as to the testimony of any witness the foreman may apply to the court and have the court reporter's notes read to them.

In the *Manges* case the court noted the trial court had found the notes taken on the item of damages were not held out as evidence and there was no showing that the notes did not correctly reflect the testimony. Under these circumstances, the court held that action of taking notes resulted at most in harmless error. See Texas Rules of Civil Procedure, 226a, 287 and 327.

In *English v. American Foreign Ins. Co.*, 529 S.W.2d 810 (Tex.Civ.App.—Texarkana, 1975), the court that had earlier frowned upon the taking of jury notes held that the use of a juror's written notes as evidence or as authority on their face as being a true representation of a portion of the testimony in order to persuade the other jurors as to a disputed issue would seem to violate the spirit, if not the letter, of Tex.R.Civ., p. 281 (which prescribes the material which may be taken into the jury room during deliberations) and of Tex.R.Civ., p. 287 (providing an exclusive method of making a witness' testimony available to the jurors in case they disagree in their recollection of such testimony).

Nevertheless, the court concluded the record failed to show the use of notes resulted in probable injury. They were read and referred to only to determine the exact date of the plaintiff's hospitalizations and evidence as to such was undisputed.

In *Twin City Fire Ins. Co. v. Gibson*, 488 S.W.2d 565 (Tex.Civ.App.—Amarillo, 1972, err. ref'd., n. r. e.), it was claimed by appellant the jurors took notes during oral argument of suggested answers to special issues made by appellee's counsel and took them to the jury room. In disposing of the contention, the court wrote:

> ". . . The taking of notes during the trial of a cause by a juror and the subsequent use of such notes should be attacked by a motion for mistrial based upon jury misconduct. No motion and accompanying evidence was tendered in this case. Further, a litigant in order to avail himself of the benefit of such motion must show by competent proof that such conduct on the part of the jury was prejudicial and harmful. See: 3 McDonald, Texas Civil Practice, §§ 14:15 and 14:16.1."

The decision leaves the inference that jury note-taking is improper but such action was not properly attacked. For other cases holding that the lack of a timely objection waives any error resulting from jury note-taking, see *State v. Trent*, 234 S.C. 26, 106 S.E.2d 527 (1959). See also Annotation in 154 A.L.R. at p. 885.

After due consideration of the facts in the instant case, we cannot conclude that this is the proper vehicle to lay down a hard and fast rule in criminal cases as to the propriety of jury note-taking and subsequent use in deliberations.

Assuming that note-taking is improper, reversible error is not here indicated. It has been held that the taking of notes by some members of a jury does not amount to such jury misconduct as to warrant a new trial where the practice is discontinued upon admonishment by the court. *Batterson v. State*, 63 Ind. 531 (1878); 154 A.L.R. 878, 884, Anno., "Taking of Notes by Jury." This is what occurred in the instant case. We are not thus confronted with a situation where, over the objection of the defense, jurors persisted in taking notes after the court told them not to do so. See *Cheek v. State*, 35 Ind. 492 (1871). Further, reversal need not result where it is not shown the offending juror used his notes during the jury's deliberations or otherwise made their existence known to his fellow jurors. *Miller v. Commonwealth*, 175 Ky. 241, 194 S.W. 320 (1917); *State v. Joseph*, 45 La.Ann. 903, 12 So. 934 (1893); *Fisher v. Strader*, 399 Pa. 222, 160 A.2d 203 (1960).

Still further, it has been consistently held that the taking of notes by a juror is not a ground for a new trial where the accused was not injured thereby. See 24 C.J.S. Crim.Law § 1449(5), p. 113; *Brooks v. Temple Lumber Co., supra; Guest v. American Petrofina Co., supra; Manges v. Willoughby, supra; English v. American Foreign Ins. Co., supra; Twin City Fire Ins. Co. v. Gibson, supra; State v. Jackson*, 201 Kan. 795, 443 P.2d 279 (1968), cert. den. 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219; *State v. Keehn*, 85 Kan. 765, 118 P. 851 (1911); *Hooks v. State*, 45 Ala.App. 221, 228 So.2d 833 (Ala.Crim.App.1969); *Gann v. State*, 330 N.E.2d 88 (Ind.1975).

In the instant case the taking of notes by three jurors was discontinued upon admonishment by the court. The notes were not referred to or used in the jury's deliberations. As soon as the trial was concluded, the trial judge permitted interrogation of the jurors concerning the note-taking, and the notes taken were made part of the record and the same have been examined by this court. We cannot conclude there has been any showing that the appellant was harmed by such note-taking. The trial court did not err in overruling the mistrial motion. Appellant's contention is overruled.

The judgment is affirmed.