# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00801-CR

**Jasper Earl Foster, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-870, HONORABLE GARY L. STEEL, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jasper Earl Foster of murder and assessed punishment, enhanced by three previous felony convictions, at 80 years in prison. On appeal, Foster contends that the trial court erred in denying Foster's requested charge on the lesser included offense of manslaughter and by failing to require the State to prove that Foster's previous convictions referred to in the enhancement paragraphs of the indictment were final convictions. We affirm.

In November 2000, Foster was incarcerated following two convictions for possession of a controlled substance. He was released from prison in June 2004 and reunited with his wife, Terri, and their 17-year-old son, Eric. According to Eric, before his father returned from prison, "[i]t was the best that it had ever been." He testified that when his father returned home, however, his mother became "depressed" and "wasn't really involved with her friends as much as she was,

and we didn't talk as much after he came back, and she just wasn't the fun-loving person that she had been before."

Foster testified that when he returned from prison, Terri admitted that she had been unfaithful, but that they agreed to recommit and "everything was water under the bridge." However, on August 13, Foster went to Terri's place of employment and saw "her and a gentleman hug and then I saw him run his hands down the back—down the back part of her body." Jeff Ivery, a close friend of Foster's, testified that a couple of weeks before the murder, Foster told him that Terri was "possibly seeing someone" and that Foster seemed "really, really upset." Ivery testified that although he had no reason to believe that there was a history of physical abuse between the couple, he told Foster, "regardless of what [you're] going through, please don't ever put your hands on [Terri] or anything."

On the evening of October 1, 2004, Foster and Terri went to Baby Acapulco restaurant with some of Terri's coworkers. According to Foster, there was "some tension" between him and Terri at Baby Acapulco because Terri was arguing with her sister. When the couple left the restaurant, they picked up Eric from a volleyball game and returned home. Eric testified that when they got home, he overheard his parents "discussing getting a divorce." He testified that his mother came into his room and "told me to call my aunt . . . [t]o come and get [Foster]." Eric called his aunt and brought the phone to Foster. Eric testified that Terri took the phone away from Foster and told his aunt that Foster "was going to kill the three of us." Foster then slapped the phone out of Terri's hands, and Eric ran outside and called 911. While Eric was outside, Foster stabbed Terri four times in the back with a knife.

2

When the police arrived, the door to the house was locked. Eric testified that "from the door we could hear noises. . . . I was asking the police officer if he could hurry up, because from the sounds that [Foster] was making I figured that he was hurting my mother." Foster later told the police that he was cutting limes before he slapped the phone away from Terri and that he forgot he had a knife in his hands when he stabbed her. Eric testified, however, that his father was not cutting limes at any time on the night of the murder.

On November 10, 2004, Foster was indicted for "knowingly and intentionally caus[ing] the death of Terri Lynn Foster by stabbing her with a knife." The indictment contained two enhancement paragraphs. Paragraph I recounted two previous felony convictions for possession of a controlled substance on February 7, 2001, and January 25, 2001, and Paragraph II recounted a previous felony conviction for burglary of a vehicle on October 30, 1989. The State brought Foster to trial before a jury on his plea of not guilty. At the close of the evidence, the trial court denied Foster's request for an instruction in the charge on the lesser included offense of manslaughter. The jury returned a guilty verdict and assessed punishment at 80 years in prison.

In his first issue, Foster contends that the trial court erred by failing to charge the jury on the lesser included offense of manslaughter. We review the trial court's decision for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).

A charge on a lesser included offense must be given if (1) the lesser included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); *see* Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).

3

Manslaughter is a lesser included offense of murder. *Moore v. State*, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). A person commits manslaughter if he recklessly causes the death of another. Tex. Penal Code Ann. § 19.04(a) (West 2003). "A person acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c) (West 2003). On appeal, Foster contends that his knowledge of Terri's relationship with another man created a "volatile situation" and that he acted "recklessly" at the time he caused her death. Although the record does contain evidence that Foster was aware of and upset by Terri's unfaithfulness, Foster testified at trial that, at the time he stabbed Terri, he was unaware of the result of his actions:

| State: | All right. You've got to tell this jury what you did next. Mr. Foster, what did you do next? |
|---|---|
| Foster: | I—I stabbed her. I stabbed Terri. I didn't really—I didn't realize that I had a knife in my hands. |
| State: | Were you in control of yourself at this point? |
| Foster: | No sir. It happened in a matter of ten seconds. It was just that quick, ten seconds. |
| State: | Do you think it's—do you think it was ten seconds later that you realized what you had done? |
| Foster: | Yes. |

Therefore, according to his own version of events, Foster was not aware of having caused Terri's death at the time of the stabbing. There is evidence that supports an inference that Foster was fully aware of his actions. Nevertheless, even if one assumed that Foster's version of events was the only

evidence offered at trial, there would still be no evidence that would permit a jury to rationally find that, at the time of the stabbing, Foster was aware of, but consciously disregarded, a substantial and unjustifiable risk that Terri would die as a result of his conduct.

The court of criminal appeals addressed a similar situation in *Schroeder v. State*, 123 S.W.3d 398, 401 (Tex. Crim. App. 2003). In that case, Schroeder appealed his murder conviction, arguing that the trial court erred by failing to instruct the jury on the lesser included offense of manslaughter. At trial, Schroeder testified that although he remembered the events leading up to the shooting, he suddenly "blacked out" and had no recollection of actually shooting the victim. *Id.* The court held that "[e]vidence of a defendant's inability to remember causing the death of the victim does not entitle the defendant to a charge on the lesser-included offense of manslaughter, and the trial court did not err by not submitting such a charge to the jury." *Id.* The court of criminal appeals has noted that "it is difficult to understand how a person may 'consciously disregard' a risk of which he is unaware." *Id.* Accordingly, Foster's claim that he was unaware of his conduct and any risks associated with his conduct at the time he stabbed Terri cannot support a charge on the lesser included offense of manslaughter based on a claim of recklessness. Thus, the trial court did not err by refusing the manslaughter instruction.

In his second issue, Foster contends that the trial court erred by failing to require the State to prove that the previous convictions referred to in the first enhancement paragraph of the indictment were final convictions. The State must prove that a conviction is final before it can be used for enhancement purposes. *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981); *see* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2006). However, a defendant's plea of true to an enhancement paragraph relieves the State of that burden. *Harvey*, 611 S.W.2d at 111.

In this case, Foster pleaded true to the enhancement paragraphs and the record contains no evidence affirmatively showing that the convictions were not final. Thus, the State was relieved of its burden of proving the finality of the convictions. *Harrison v. State*, 950 S.W.2d 419, 422 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *see Johnson v. State*, 784 S.W.2d 413, 414 (Tex. Crim. App. 1990) ("After the State established that a defendant has been previously convicted, this Court will presume that a conviction is final when faced with a silent record regarding such.").

Foster also contends that the State did not properly allege that the previous convictions in the first enhancement paragraph were final convictions. This enhancement paragraph of the indictment provided:

> It is further presented in and to said Court at said term that prior to the commission by him of the primary offense, the Defendant was convicted of a felony, to wit:
>
> on or about February 7, 2001, in Cause No. 7304 in the 8th District Court of Franklin County, Texas, the Defendant was convicted of the offense of Possession of a Controlled Substance—cocaine in the amount of at least 4 grams but less than 200 grams;
>
> on or about January 25, 2001, in Cause No. 995336 in the 167th District Court of Travis County, Texas, the Defendant was convicted of the offense of Possession of a Controlled Substance—cocaine in the amount of at least 4 grams but less than 200 grams . . . .

This paragraph does not, by its terms, allege that the previous convictions in cause numbers 7304 and 995336 were "final convictions." However, since the purpose of the enhancement paragraphs is to provide notice, "it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense." *Williams v. State*, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (quoting *Freda v. State*,

6

704 S.W.2d 41, 42 (Tex. Crim. App. 1986)). For example, the date on which the prior convictions became final need not be alleged. *Hollins v. State*, 571 S.W.2d 873, 876 n.1 (Tex. Crim. App. 1978). Nor is it necessary to allege the sequence of the prior convictions. *See Jingles v. State*, 752 S.W.2d 126, 129 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Rather, the notice must enable the accused "to find the record and make preparation for a trial of the question whether he is the convict named therein." *Brown v. State*, 636 S.W.2d 867, 868 (Tex. App.—Fort Worth 1982, no pet.).

Here, the allegations in the enhancement paragraph include the courts in which the convictions were obtained, the cause numbers in which the convictions were obtained, the time of the convictions, and the nature of the offenses. Foster pleaded true to the enhancement paragraphs at trial, and pen packets containing information from both previous convictions were introduced into evidence without objection. The pen packet for cause number 995336 gives January 25, 2001, as the "Date Sentence was Imposed," and the pen packet for cause number 7304 gives February 7, 2001, as the "Date of Judgment."[1] On this record, we conclude that the allegations in the enhancement paragraph gave Foster adequate notice to prepare for trial.

---

[1] Foster seems to argue that the allegations in the indictment were defective because he was placed on probation in cause numbers 995336 and 7304. However, there is no evidence in the record to the effect that he was placed on probation for these convictions. Instead, the pen packets for both convictions show that Foster was sentenced to five years in prison in cause number 995336 and seven years in prison in cause number 7304 on January 25, 2001, and February 2, 2001, respectively. There is evidence that Foster had been placed on community supervision following a state jail felony—possession of a controlled substance—that occurred on April 19, 1997, in cause number 0972533, and that his community supervision was revoked on January 25, 2001. However, there is no reference to cause number 0972533 in the enhancement paragraphs in the indictment in this cause.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   May 17, 2007

Do Not Publish