COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-175-CR


KARL WILLIAMS                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I. Introduction
        Appellant Karl Williams entered an open plea of guilty to the offense of
sexual assault and a plea of not true to an enhancement allegation. After
finding Williams guilty of sexual assault, the trial court ultimately found the
State’s enhancement allegation to be true and sentenced Williams to forty
years’ confinement. In five points, Williams argues that the trial court erred by
granting the State’s oral, unsworn motion for continuance, by admitting a
probable cause affidavit during the punishment phase of the trial, and by
overruling his objections that the State’s notices of intent to enhance
punishment and intent to introduce extraneous offenses were untimely filed. We
will affirm.
II. Procedural Background
        Williams’s case was set for trial on March 18, 2004. The day before, on
March 17, 2004, the State provided Williams with notice of its intent to
enhance his punishment. The trial court called Williams’s case for trial on
March 18th, and the State requested a continuance; the defense announced
ready and opposed the State’s request for a continuance. The trial court
granted a continuance, and later that same day (March 18th) the State filed, and
provided Williams with, notice of its intent to offer extraneous offenses.
        Williams’s case was reset for seven days later, on March 25, 2004, and
proceeded to trial on that date. Counsel for Williams argued that the State’s
notice of intent to offer extraneous offenses and notice of intent to enhance
punishment were untimely. He asserted that the State should be precluded
from offering evidence of any extraneous offenses and should be barred from
enhancing Williams’s punishment. The trial court overruled both of Williams’s
objections, and Williams entered an open plea of guilty.
        During the punishment phase of the trial, an investigator for Denton
County testified that fingerprints he had taken from Williams matched
fingerprints in a penitentiary packet offered by the State. The trial court also
admitted, over Williams’s objection, the probable cause affidavit supporting
Williams’s arrest warrant in the current case. After the State rested, Williams’s
wife testified that Williams is a good husband, that he works hard, and that he
supports five people. She did admit, however, that she was not familiar with
the details of the charged offense. 
        The trial court found the enhancement allegation to be true and sentenced
Williams to forty years’ confinement. 
III. Motion For Continuance
        In his first point, Williams argues that the trial court erred by granting the
State’s oral motion for continuance because it was based upon insufficient
cause and was not in writing. The State maintains that the trial court acted
within its discretion by granting the State’s motion for continuance. 
        It is well settled that a criminal action may be continued on the written
motion of the State or of the defendant, so long as sufficient cause is shown. 
See Tex. Code Crim. Proc. Ann. art. 29.03 (Vernon 1989). The court of
criminal appeals has explained, however, that a trial court also possesses
discretion to grant an oral motion for continuance on equitable grounds. See
Darty v. State, 149 Tex. Crim. 256, 193 S.W.2d 195, 195 (1946); see also
Hernandez v. State, 492 S.W.2d 466, 467 (Tex. Crim. App. 1973). “[A] motion
for continuance, based on equitable grounds rather than statutory grounds, is
entirely within the sound discretion of the court, and will only call for reversal
if it is shown that the court clearly abused its discretion.” Alvarado v. State,
818 S.W.2d 100, 103 (Tex. App.—San Antonio 1991, no pet.). Thus, the
granting or denying of a motion for continuance, equitable or otherwise, is
within the discretion of the trial court and will not be reversed on appeal unless
it is shown that the court abused its discretion. See Janecka v. State, 937
S.W.2d 456, 468 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 (1997). 
An appellant must show that he was actually prejudiced by the trial court’s
decision to grant the continuance. Vasquez v. State, 67 S.W.3d 229, 240
(Tex. Crim. App. 2002). [1]
        Here, after the State made its oral motion for continuance, counsel for
Williams argued that his client would be prejudiced by the granting of the
continuance. Williams argued that, because the State had provided him with
notice of its intent to enhance Williams’s punishment just one day earlier, the
continuance had the effect of curing the untimely notice. The State responded
that the timeliness of its notice of intent to enhance punishment was not
relevant to whether the continuance was granted. The State argued that it was
“not prepared to go forward” and that “the only purpose [for the continuance
was] so that justice could be done properly.” The State also pointed out that
this was its first request for a continuance. 
        Williams failed to articulate any specific prejudice arising from the trial
court’s granting of the continuance. Williams was set to enter an open plea of
guilty to the court. There is no evidence that the typical prejudices, usually
associated with the denial of a motion for continuance—inadequate trial 
preparation time, unfair surprise, or inability to locate witnesses—existed here. 
See Dotson v. State, 146 S.W.3d 285, 297 (Tex. App.—Fort Worth 2004, pet.
ref’d). The trial court apparently discounted Williams’s argument that the State
was seeking a continuance for the purpose of curing the untimeliness of its
notice of intent to enhance punishment. Moreover, whether the inability to
avoid or circumvent punishment enhancements is the type of “prejudice” meant
to be avoided by the granting of a motion for continuance is questionable, and
Williams provides no support for this assertion. We hold that the trial court did
not abuse its discretion by granting the State’s oral motion for continuance. 
See Alvarado, 818 S.W.2d at 103 (holding trial court did not abuse its
discretion by granting co-defendant’s motion for continuance based on
equitable grounds). We overrule Williams’s first point.
 
IV. Probable Cause Affidavit
        In his second and third points, Williams argues that the trial court erred
by admitting a probable cause affidavit during the punishment phase of the trial.
Williams contends that the affidavit constituted hearsay and violated his Sixth
Amendment right to confrontation. The State maintains that any error resulting
from the admission of the affidavit was harmless.
        The trial court admitted State’s Exhibit 2—a probable cause affidavit
supporting the warrant issued authorizing Williams’s arrest—at punishment just
before the State rested. After this, the trial court stated that it had reviewed
Williams’s pre-sentence investigation report (PSI). Without deciding whether
it was error for the trial court to admit the affidavit, we hold that any possible
error resulting from the admission of the affidavit was harmless because the
affidavit contains facts identical to those found in the PSI, which was
considered by the trial court without objection. See Tex. R. App. P. 44.2(b);
Tex. Code Crim. Proc. Ann. art. 42.12, § 9(c)(1) (Vernon Supp. 2004-05)
(stating judge may inspect PSI if the defendant pleads guilty); Elder v. State,
132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref’d) (reasoning
inadmissible evidence rendered harmless if same or similar evidence introduced
elsewhere without objection), cert. denied, 125 S. Ct. 1645 (2005). The facts
in the PSI are cumulative of those in the affidavit, and, moreover, are the very
facts of the offense to which Williams pleaded guilty. We overrule Williams’s
second and third points.
V. Timeliness Of Notices
        In his fourth and fifth points, Williams argues that the State’s notice of
intent to enhance punishment and notice of intent to use extraneous offenses
were not timely.
        A. Notice of Intent to Enhance Punishment
        The State filed its notice of intent to enhance punishment on March 17,
2004. Williams entered his open plea of guilty on March 25, 2004, and the
punishment phase began that same day. Thus, Williams received the State’s
notice eight days before he entered his plea.
        An accused is entitled to notice of the State’s intent to use prior
convictions for enhancement purposes. See Hollins v. State, 571 S.W.2d 873,
876 (Tex. Crim. App. 1978). A proper notice of intent to enhance punishment
must be given in a timely manner, but it need not be pled in the indictment
itself to be considered proper notice, so long as it is pleaded “in some form”
prior to trial. Brooks v. State, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997);
Hudson v. State, 145 S.W.3d 323, 326 (Tex. App.—Fort Worth 2004, pet.
ref’d); see also McNatt v. State, 152 S.W.3d 645, 652 (Tex. App.—Texarkana
2004, pet. filed) (listing requirements of proper notice of intent to enhance
punishment). Here, we are concerned with the requirement that the notice be
timely.
        Notice is presumptively reasonable if given at least ten days before trial. 
Accord Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon 2005) (providing that
appointed counsel is entitled to ten days to prepare for proceeding), art.
28.10(a) (Vernon 1989) (providing that, after notice and upon request, a
defendant is allowed not less than ten days to respond to an amended
indictment or information); see also Hudson, 145 S.W.3d at 326; Fairrow v.
State, 112 S.W.3d 288, 294-95 (Tex. App.—Dallas 2003, no pet.); Sears v.
State, 91 S.W.3d 451, 455 (Tex. App.—Beaumont 2002, no pet.). In Hudson,
we explained that while neither Fairrow nor Sears suggested a limited, certain
time frame within which notice must be given to be timely, notice is
presumptively “reasonable” if given at least ten days before trial. See Hudson,
145 S.W.3d at 326. While ten days’ notice is presumptively reasonable, the
issue to be resolved here is whether eight days’ notice is reasonable notice. 
See Barnes v. State, 152 S.W.3d 144, 146 (Tex. App.—Dallas 2004, no pet.)
(“Accordingly, we must determine whether the notice appellant received in this
case was reasonable.”).
        We do not, as the dissent contends, draw any distinction between the
timeliness of notice of punishment enhancement provided by amending the
indictment or provided in a different document. We specifically recognize that
it is the reasonableness of the notice, not the form of the notice, that controls. 
See, e.g., Hollins, 571 S.W.2d at 876. Nor does Article 28.10(a) of the code
of criminal procedure, as the dissent also contends, automatically mandate that
a defendant be given ten days’ notice of an amendment to an indictment. See
Tex. Code Crim. Proc. Ann. art. 28.10(a). That statute authorizes the State to
amend an indictment, including by adding a punishment enhancement
allegation, “at any time before the date the trial on the merits commences,”
but on the “request of the defendant, the court shall allow the defendant not
less than 10 days, or a shorter period if requested by the defendant to respond”
to the amendment. Id. Thus, the statutory ten-day period does not limit when
the State may amend an indictment; it simply mandates, upon a defendant’s
request, a ten-day response time. [2] See id. Here, Williams did not request any
length of time to respond to the enhancement allegations. He did the opposite;
he opposed the State’s motion for continuance which provided him with time
to respond and he did not seek additional time to respond after his case was
reset eight days later. According to the dissent, although the State is entitled
by statute to amend an indictment “at any time” before trial on the merits
commences and is required to provide only “reasonable” notice of punishment
enhancement allegations, if the State fails to provide notice of the punishment
enhancement allegations ten days prior to the first trial setting, it is somehow
barred forever from pleading enhancement allegations. This is not a
“diminishing salami” theory—so named by the dissent—it is bologna. 
        A number of cases have held that the State’s notice of intent to enhance
punishment is timely despite being given less than ten days before trial. In
Castilla v. State, the State provided notice of intent to enhance punishment
seven days before the guilt/innocence phase of trial. No. 05-01-01776-CR,
2002 WL 31261741, at *4 (Tex. App.—Dallas Oct. 10, 2002, no pet.) (not
designated for publication). The Castilla court determined that this provided
appellant with “ample notice” of the State’s intent to allege a prior conviction
for enhancement purposes. Id. In Barnes, seven days’ notice before trial was
deemed reasonable. See Barnes, 152 S.W.3d at 146. There, the Dallas Court
of Appeals refused to hold that the State’s motion to enhance punishment was
equivalent to an amendment of the indictment, and therefore refused to apply
an absolute ten-day notice period pursuant to article 28.10(a) of the Texas
Code of Criminal Procedure. See id.
        Other cases have determined that less than ten days’ notice is
unreasonable and untimely. In Hudson, we held that the State’s notice was
untimely because it was provided six days before the punishment phase of the
trial. See Hudson, 145 S.W.3d 326. We placed considerable emphasis on the
fact that notice was given after the conclusion of the guilt/innocence phase. 
See id. In Fairrow, the court held that notice given on the day of the trial was
untimely. See Fairrow, 112 S.W.3d at 295. The Beaumont Court of Appeals
in Sears determined that notice given the Friday before trial was set to begin
on Monday was untimely. See Sears, 91 S.W.3d at 455. In Hackett v. State,
the Waco Court of Appeals held that notice given five days before trial was
untimely. 160 S.W.3d 588, 590-91 (Tex. App.—Waco 2005, pet. filed) (not
designated for publication). The court held that a minimum of ten days’ notice
must be given when the State files a separate pleading providing notice of its
intent to enhance punishment because article 28.10(a) requires a minimum of
ten days’ notice for an amendment to an indictment, and “[a]n enhancement
notice which affects the range of punishment is a de facto amendment of the
indictment.” Id. at 591. Also, in Villescas v. State, the El Paso Court of
Appeals held that six days’ notice before trial began was not timely, reasoning
that six days’ notice prior to trial was simply insufficient and that the record
demonstrated that appellant was “surprised and unprepared in his defense with
respect to the alleged prior convictions.” No. 08-03-00131-CR, 2005 WL
327022, at *2-3 (Tex. App.—El Paso Feb. 10, 2005, pet. filed) (not designated
for publication).
        An analysis and application of the aforementioned cases leads us to
conclude that the State provided reasonable notice of its intent to enhance
Williams’s punishment. The State provided notice eight days before Williams
entered his open plea of guilty. This is one day more than was provided in
Barnes and Castilla, and notice was determined to be reasonable in both of
those cases. See Barnes, 152 S.W.3d at 146; Castilla, 2002 WL 31261741,
at *4. Unlike in Fairrow, notice was not given on the day of the trial, and
unlike in Sears, notice was not given on a Friday before the trial began on the
next Monday. See Fairrow, 112 S.W.3d at 295; Sears, 91 S.W.3d at 455. 
Moreover, unlike Hudson, in which notice was given after the guilt/innocence
phase, notice was given here eight days before Williams entered his plea of
guilty and the trial court proceeded to punishment. Hudson, 145 S.W.3d 326. 
And unlike Villescas, there is no evidence of surprise or unpreparedness
resulting from the State’s intent to enhance punishment. See Villescas, 2005
WL 327022, at *3. Furthermore, unlike the Waco Court of Appeals in Hackett,
we have not previously held that a separate enhancement notice that could
affect punishment is a “de facto” amendment to the indictment requiring a
minimum of ten days’ notice in compliance with article 28.10(a). See Hackett,
160 S.W.3d at 591.
        We also look to the underlying purpose of the notice sufficiency rule. The
court of criminal appeals has stated, “The accused is entitled to a description
of the judgment of former conviction that will enable him to find the record and
make preparation for a trial of the question whether he is the convict named
therein.” Hollins, 571 S.W.2d at 875. Sufficient notice makes the accused
aware “that a greater penalty is to be sought than for a first offense, and to
enable him to take issue thereon, and if possible show there is a mistake in
identity, or that there was no final former conviction or the like.” See id. at
876; see also Holt v. State, 899 S.W.2d 22, 24 (Tex. App.—Tyler 1995, no
pet.) (reasoning that “the purpose of enhancement allegations in the indictment
is to give the defendant notice of the earlier convictions so that he can prepare
his defense”); Earl v. State, 870 S.W.2d 669, 671 (Tex. App.—Houston [1st
Dist.] 1994, no pet.) (same).
        Here, counsel for Williams made it clear on March 18, 2004 that his client
opposed the granting of the State’s oral motion for continuance. He stated that
the open plea had been set “for probably about three to four weeks right now.”
Despite the State’s notice of intent to enhance punishment, Williams did not
request additional time to respond to the enhancement allegation. He instead
freely and voluntarily entered his open plea of guilty eight days later on March
25, 2004. In terms of punishment, the State presented compelling evidence
that Williams had a previous felony conviction, and he was afforded the
opportunity to rebut that evidence. No surprise or lack of preparation is
reflected in the record. Just before entering his plea, while being questioned
by his attorney, Williams stated, “I feel that my punishment would be better
from the Judge. I don’t want the DA to assess anything. So, no, I won’t plea
bargain or nothing. I’ll take whatever the Judge gives me, if it’s life or five
years or whatever, I’ll take her judgment.” 
        We hold that the State provided reasonable notice to Williams of its intent
to enhance his punishment. Williams did not request any additional time to
respond to the enhancement allegations. We overrule Williams’s fourth point.        B. Notice of Intent to Use Extraneous Offenses
        In his fifth point, Williams argues that the State failed to give timely
notice of its intent to use extraneous offenses at the punishment phase. The
State contends that any error by the court in overruling Williams’s objection to
the timeliness of the notice was harmless because the State did not offer any
evidence of extraneous offenses at the punishment phase. 
        During the guilt/innocence phase, the State offered and the trial court
admitted Williams’s signed judicial confession. The State then rested; it did not
offer any evidence of extraneous offenses. During the punishment phase, the
State introduced and the trial court admitted the probable cause affidavit and
a pen packet in order to prove up the enhancement allegation. The State did
not offer any evidence, other than the prior conviction alleged in the
enhancement allegation, of extraneous offenses. Assuming that it was error to
overrule Williams’s objection to the timeliness of the State’s notice of intent to
offer extraneous offenses, any error was harmless because the trial court did
not admit evidence of Williams’s other crimes, wrongs, or acts. See Tex. R.
App. P. 44.2(b). We overrule Williams’s fifth point.
VI. Conclusion
        Having overruled all five of Williams’s points, we affirm the trial court’s
judgment.

                                                          SUE WALKER
                                                          JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: August 18, 2005



COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-175-CR


KARL WILLIAMS                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

DISSENTING OPINION

------------
        Because I see the thoughtful majority opinion and those it relies on as
nudging criminal law down the slippery slope of gamesmanship decried in civil
law, I must respectfully dissent. 
        Essentially, the majority notes that if the State provides the enhancement
notice by adding it to the bottom of the indictment, a defendant is entitled to
ten days’ notice unless he does not complain about the lack thereof. [1] If,
however, the State writes the same words on a separate piece of paper, seven
or eight days’ notice is ample, even over a defendant’s objection that the
vehicle allowing the shorter notice, that is, in this case the trial court’s ruling
granting the State’s oral motion for continuance, prejudiced his case. 
        Enhancement allegations are not mere footnotes to a criminal case. 
Enhancement allegations implicate due process considerations regardless of
how the State presents the allegations. [2] Prior convictions can elevate a
misdemeanor to a felony; for example, they are elements of the offense and,
without dispute, must be pled in the indictment in felony cases of DWI, [3] theft, [4]
and family violence assault. [5]
        But prior convictions used as punishment enhancements can have the
same effects on the liberty of the accused as those that are elements of the
offense. Consider the following hypothetical situation. During the first
semester of their junior year of high school, five seventeen-year-old buddies
drank a few beers and decided to move ten calves from the new high school
principal’s pasture into one of their uncle’s pastures as a prank. They got
caught after being stopped on the highway by a deputy sheriff for suspicion of
DWI. After a speedy jury trial, the five boys were found guilty of third-degree
felony theft, [6] and the trial court sentenced them to two years’ confinement in
the Institutional Division of the Texas Department of Criminal Justice. [7] The
boys earned good conduct time during their confinement, completed their
G.E.D.s, applied to and were accepted by various universities in the State of
Texas, and, after serving about eighteen months of their sentences, were
released from prison in the spring, a couple of weeks before their former
classmates’ graduation. The school board of their former high school passed
a resolution to allow the five to walk across the stage with their former
classmates. On the day of graduation, the principal coincidentally celebrated
his sixtieth birthday.
        Five years to the day later, the buddies, who had all graduated from
college with honors, accepted respectable jobs, married and started their
families, reunited at their high school reunion. They drank a few beers and
reminisced. The next day, the now sixty-five-year-old principal discovered that
ten of his emus were missing. A week later, the emus were discovered in the
adjoining pasture, owned by the sheriff.
        Suspicion focused on the five buddies, and even though the bottom had
fallen out of the market for emus, the grand jury indicted the five young men
for second-degree felony theft. [8]
        On a Thursday afternoon at 4:30 p.m., eight days before the initial trial
setting, the prosecutor faxed a notice of enhancement to each defense lawyer
on the case, indicating that if convicted, each defendant’s punishment would
be enhanced because of his prior conviction for stealing the calves. Each legal
assistant of each lawyer dutifully placed each notice of enhancement in each
lawyer’s chair. Meanwhile, the lawyers, all board-certified, were attending and
speaking at the annual TCDLA conference. They returned to their respective
homes in their respective cities late Sunday night. After making the rounds at
their respective district courthouses on Monday morning, they returned to their
offices after lunch and found the documents in their chairs. Three-and-a-half
days before trial, the lawyers discovered that their twenty-three-year-old clients
were facing life imprisonment. [9] The trial court denied their timely joint oral
motion for continuance. 
        How can an appellate court claim, without winking at due process
guarantees of the law, that a criminal defendant whose punishment may be so
increased is not entitled to the same preparation time as the defendant who is
given the same notice on a different piece of paper? There exists a doctrine
called the salami theory: You may slice the salami often, but if you slice it thin
each time, no one notices until the salami is mostly or entirely gone. [10] 
        In Texas, it is well-settled that 
the purpose of an indictment is to give the defendant notice of the
specific offense with which he is charged and to enable the court,
upon conviction, to pronounce the proper judgment, and to enable
the accused to plead the judgment that may be given upon it in bar
of any further prosecution for the same offense. [11] 

Included in the notice requirement are the elements of the offense and the
degree of the offense that establishes jurisdiction and the range of
punishment. [12] Historically, the pleadings necessary to enhance the range of
punishment were contained in the indictment. [13] When the State failed to
include the enhancement pleadings in the indictment in Brooks, the Texas Court
of Criminal Appeals held that, although the State must plead the enhancement
allegations, the pleadings do not have to appear in the indictment: [14]
When Long was decided, indictments were the only pleadings
of the State. The Long court was concerned that failing to include
enhancements in the indictment “would, in effect, do away with
criminal pleadings.” Further, when Long was decided, the law
required the State to plead “whatever matter affects the degree or
kind of punishment.” By contrast, statute now permits the State
to have other pleadings, and Sharp eliminated the requirement that
an indictment plead punishment issues. Moore held that prior
convictions used for enhancement must be pled but did not
categorically say that the pleading used must be an indictment. 
Sigler had nothing to do with whether enhancements must be pled
but held that such enhancements do not implicate double jeopardy
concerns. In fact, a reading of Sigler indicates that Patterson
apparently cited it as adverse authority on whether enhancements
should be included in an indictment because of Sigler's holding that
enhancements are not elements of the offense but historical facts
relating to punishment. 
 
We note that the concurring opinion in Patterson also
maintained that enhancement allegations must be contained in an
indictment and cited four additional cases in support of the idea
that "proper notice" must be given. Coleman and Bevins held
merely that enhancements need not be alleged with the same
particularity as the primary offense in an indictment; they are not
direct authority for the proposition that an indictment must refer to
such enhancements. Parasco and Rogers did purport to hold that
prior convictions used for enhancement must be alleged in the
indictment. But Parasco's holding was premised in part on the
notion that the prior conviction in the particular case constituted an
element of the offense. This part of Parasco's holding was
subsequently overruled. Due to its holding that the prior conviction
was an element of the offense, its alternative holding that
enhancements must be alleged in the indictment could be viewed
as mere dicta. Moreover, Parasco cited no authority for this
alternative holding and gave no reasoning other than to characterize
alleging the enhancement offense in the indictment as “proper
notice.” And Rogers relied solely upon Parasco as authority for its
holding.
 
The theme through all of these cases appears to be that a
defendant is entitled to notice of prior convictions to be used for
enhancement. But alleging an enhancement in the indictment is
not the only reasonable method of conveying such notice. Even
Judge Clinton, the author of the majority opinion in Patterson, has
subsequently maintained that enhancement paragraphs do not have
to be in the indictment:
 
We simply observed in Patterson that the enhancement
paragraphs must be pled somewhere, and, as the court
of appeals points out, when the seminal case on
enhancement paragraphs was decided, an indictment
was the only pleading available to the State. We did
not necessarily indicate that an enhancement
paragraph must be supported by a grand jury finding,
and in fact we expressly held that a deadly weapon
allegation need not emanate from a grand jury finding. 

Hence, we conclude that, to the extent prior cases have
indicated that enhancement paragraphs must be pled in the
indictment, those cases did not survive our decisions in Sharp and
Rosales. As with deadly weapon findings, prior convictions used
as enhancements must be pled in some form, but they need not be
pled in the indictment—although it is permissible and perhaps
preferable to do so. In this case, the requisite notice was conveyed
by the State's motion and the trial court's order. [15]

        In his concurring opinion, Judge Mansfield contended,
 
[I]f the State intends effectively to increase the actual
amount of prison time the accused will serve if he is convicted by
seeking an affirmative deadly weapon finding, then the accused
must be provided adequate advance notice so he can prepare a
defense to the State's allegation that he used or exhibited a deadly
weapon. Indeed, failure to provide such adequate notice in
advance may well violate the accused's due process and due
course of law rights under the United States and Texas
Constitutions. Similarly, so that the accused is provided a
reasonable opportunity to contest the validity of prior convictions
the State intends to use for enhancement purposes, he must be
given adequate advance notice of the State's intent to do so. [16]

        Slowly, Texas courts, not the legislature, have decided that the
indictment no longer must provide the requisite punishment notice and that
some constantly changing number of days provides sufficient, yea ample notice
of the State’s intent to increase exponentially the maximum punishment a jury
or a judge may assess. But notice must still be given and must be given in a
timely manner. The legislature has mandated that a defendant’s appointed
counsel in a criminal case, even a probation revocation, be given ten days to
prepare for trial. [17] Is it proper for this court to circumvent the clear intent of
the legislature by modifying the manner of providing notice? That is, is it
proper to use a loosening of the manner in which notice must be given to
accomplish a shortening of trial preparation time? In enacting article 1.051(e),
the legislature has suggested that due process is satisfied by ten days’ notice. 
Respectfully, I believe that the legislature should assume the responsibility of
stating clearly how enhancement notices must be pled and how much time a
defendant in a criminal case must be afforded to prepare to defend against
enhancement allegations that can potentially elevate his maximum punishment
from ten years’ incarceration to life imprisonment. [18] The gradual erosion of the
due process protections afforded by requiring timely notice of the allegations
against which a defendant must defend should be addressed by the legislature.        I would hold that the trial court abused its discretion by granting the
State’s oral motion for continuance made on the day the case was set for trial
because the prejudice that Appellant was required to show was obvious—his
exposure increased fivefold, from twenty years to life. I would further hold this
abuse of discretion harmful under Texas Rule of Appellate Procedure 44.2(a)
because I believe that Appellant’s right to due process was violated. [19] Even
under Texas Rule of Appellate Procedure 44.2(b), however, I would hold that
the error was sufficiently harmful: Appellant’s sentence of forty years’
confinement is double the maximum amount of confinement he faced absent
the trial court’s error. [20]
        Because I perceive the salami to have been sliced too often, although the
cut has been thin each time, I must respectfully dissent from the majority
opinion.
 
                                                          LEE ANN DAUPHINOT
                                                          JUSTICE

PUBLISH
DELIVERED: August 18, 2005
 
NOTES
Majority Opinion Notes 
1. The denial of an oral motion for continuance preserves nothing for our
review. Ricketts v. State. 89 S.W.3d 312, 317 (Tex. App.—Fort Worth 2002,
pet ref’d). But here, Williams complains of the granting of the State’s oral
motion for continuance. 
2. The dissent—based on its erroneous construction of article 28.10(a) as a ten-day-notice requirement instead of a ten-days-to-respond
requirement—characterizes the statutory ten days as “the whole salami” and
construes shortening of the purported ten-day-notice requirement as slicing off
pieces of the whole salami, resulting in a “diminishing salami.” 
         Dissenting Opinion Notes
1. See majority op. at 8-9.
2. See, e.g., Ex parte McAtee, 586 S.W.2d 548, 550 (Tex. Crim. App. 1979);
McNatt v. State, 152 S.W.3d 645, 653 (Tex. App.—Texarkana 2004, pet.
filed); Sears v. State, 91 S.W.3d 451, 455 (Tex. App.—Beaumont 2002, no
pet.).
3. Tex. Penal Code Ann. § 49.09(b)(2) (Vernon Supp. 2004-05); Gibson v.
State, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999). 
4. Tex. Penal Code Ann § 31.03(e)(4)(D) (Vernon Supp. 2004-05); Gant v.
State, 606 S.W.2d 867, 871 (Tex. Crim. App. [Panel Op.] 1980).
5. Tex. Penal Code Ann. § 22.01(a)(1), (b)(2) (Vernon Supp. 2004-05);
Sheppard v. State, 5 S.W.3d 338, 340 (Tex. App.—Texarkana 1999, no pet.).
6. See Tex. Penal Code Ann. § 31.03(a), (b), (e)(5) (providing that theft of ten
or more head of “cattle, horses, or exotic livestock or exotic fowl” in one
transaction is a third-degree felony).
7. See id. § 12.34(a) (Vernon 2003).
8. See id. § 31.03(f)(3) (upgrading the offense one level if the owner is an
“elderly individual”); §31.01(10) (Vernon Supp. 2004-05) (referring to definition
in section 22.04(c)); § 22.04(c) (Vernon 2003) (providing that an elderly person
is “a person 65 years of age or older”); see also Tex. Agric. Code Ann. §
142.001(5) (Vernon 2004) (defining exotic fowl as “avian species that is not
indigenous to this state”).
9. See Tex. Penal Code Ann. § 12.42(b) (Vernon Supp. 2004-05) (providing that
“[i]f it is shown on the trial of a second-degree felony that the defendant has
been once before convicted of a felony, on conviction he shall be punished for
a first-degree felony”).
10. See, e.g., Almota Farmers Elevator and Warehouse Co. v. United States,
409 U.S. 470, 480, 93 S. Ct. 791, 797-98 (1973) (Powell and Douglas, JJ.,
concurring) (“[I]t would be unjust to allow the Government to use 'salami
tactics' to reduce the amount of one property owner's compensation by first
acquiring an adjoining piece of property or another interest in the same property
from another property owner.”); Hubler v. City of Corpus Christi, 564 S.W.2d
816, 821 (Tex. Civ. App.—Corpus Christi 1978, writ ref’d n.r.e.) (“Plaintiff
contends that by completing such projects in stages, the defendants are using
the ‘old salami technique’ by gradually depriving him of his land without
instituting condemnation proceedings or paying just compensation.”).
11. Sledge v. State, 953 S.W.2d 253, 263 (Tex. Crim. App. 1997); see also
Tex. Code Crim. Proc. Ann. arts. 21.04, 21.11 (Vernon 1989) (defining the
certainty required in an indictment).
12. See, e.g, Few v. State, 588 S.W.2d 578, 585 (Tex. Crim. App. [Panel Op.]
1979).
13. Long v. State, 36 Tex. 6, 10 (1871). 
14. Brooks v. State, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).
15. Id. at 33-34 (citations omitted).
16. Id. at 34-35 (Mansfield, J., concurring).
17. Tex. Code Crim. Proc. Ann. art. 1.051(e) (Vernon 2005) (providing that
appointed counsel is entitled to ten days to prepare for a proceeding); see Rojas
v. State, 943 S.W.2d 507, 511 (Tex. App.—Dallas 1997, no pet.) (holding that
appointed counsel is entitled to ten days to prepare for probation revocation
proceeding); see also Campbell v. State, 456 S.W.2d 918, 920 n.3 (Tex. Crim.
App. 1970) (holding that probationer is entitled to copy of revocation motion
at least ten days before hearing).
18. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2004-05) (providing
the “three strikes” law).
19. See Tex. R. App. P. 44.2(a).
20. See Tex. R. App. P. 44.2(b).