**Opinion issued March 7, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00355-CR

_____

**JOSE SANTOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court
Waller County, Texas
Trial Court Case No. 18-05-16434**

---

## MEMORANDUM OPINION

A jury convicted appellant, Jose Santos, of the first-degree felony offense of aggravated kidnapping.[1] After finding the allegations in two enhancement paragraphs true, the jury assessed Santos's punishment at confinement for life.

---

[1] *See* TEX. PENAL CODE § 20.04(a)(4).

In four issues, Santos argues that (1) the trial court erred by failing to set an evidentiary hearing on Santos's motion for new trial before the motion was overruled by operation of law; (2) the State did not present sufficient evidence that Santos had the intent to secrete or hold the complainant in a place where she was unlikely to be found; (3) the State did not provide sufficient notice of the allegations in an enhancement paragraph; and (4) a material variance existed between the alleged enhancement paragraph and the proof of the enhancement admitted at trial.

We affirm.

## Background

In February 2018, Santos and the complainant, A.S. ("Ashley"),[2] had been dating for several months. Ashley was approximately 15 weeks pregnant. Santos and Ashley had a tumultuous relationship, and he had been violent and threatening with her on several occasions prior to the incident that forms the basis for this appeal.

Santos lived at a complex of three buildings that witnesses referred to as a "banquet hall" or "jazz bar" in Prairie View, Texas. The banquet hall was not open to the public. The middle building of the complex had a big open room and a smaller enclosed room that Santos used as a bedroom. Ashley lived in an apartment in Prairie View that had electricity but no running water, so she did not like to spend time there. Ashley "mainly lived out of [her] car." She estimated that she had been to the

---

[2]     In this opinion we refer to the complainant by a pseudonym to protect her privacy.

banquet hall to see Santos fifty to a hundred times. She "would go there frequently," but she did not keep any belongings, other than possibly some toiletries, at Santos's residence.

On February 21, 2018, Ashley left her apartment and went to the banquet hall to get some rest. Her friend Kyle McCafferty, who lived in the same apartment complex as she did, was aware that she went to the banquet hall. Santos had a friend over at the time Ashley arrived, but the friend left soon thereafter. Ashley did not feel well and wanted to lay down, but the bed "was all messed up" and she "got a little lippy" with Santos. After staying at the banquet hall for around an hour, she decided to leave.

Ashley walked out to her car, and Santos followed her. As she stood at her car with the driver's side door open, Santos suddenly punched her in the face. Ashley's head "bounced off the top of [her] car," and Santos then pushed her into the front passenger seat. Santos got into the driver's seat. Ashley testified:

> He didn't want me to sit up. He kept making sure I was laid down, in my mind, so nobody could see me because he kept, like, looking around. He kept punching me. He punched me numerous times in my stomach. I was pregnant at the time.

Ashley and Santos were in her car for around an hour. The record does not indicate whether Santos drove anywhere or whether the car remained parked in the parking lot of the banquet hall.

3

Santos then pulled Ashley out of her car and started "guiding" her, with his hands on her, to the building where he resided. At the door to the building, Ashley started fighting back, but she "gave up pretty quickly" and fell to the ground. Santos was "pretty agitated" at that point, and Ashley tried to calm him down as he walked her through the building to his bedroom. Once in his bedroom, Santos taped Ashley's wrists behind her back, taped her ankles together, and wrapped a comforter around her. The comforter extended from Ashley's chest to her knees, and Santos used tape to secure it around her chest.

Santos pushed Ashley to the bed, where she remained for most of the night. He demanded that she give him the passcode for her tablet, which she did. As Santos went through the contents of Ashley's tablet, he started getting upset. He hit her in the face at least one more time, and he choked her multiple times while she was still wrapped in the comforter, causing her to pass out. Santos also threatened her with a gun and told her that he was going to shoot her. Santos pulled the trigger, but the gun "just clicked, no bullets came out."

At some point during the night, Santos removed the tape from Ashley's arms, but not her ankles. They then had sexual intercourse. Ashley did not want to have sex with Santos, but she believed that if she said no, Santos would tape her arms

back up or think about killing her.[3] She testified that she "didn't fight him," she just did "kind of whatever [she] had to do or say to make him feel like [she] wasn't going to tell or just make him calm down and let [her] go."

Santos fell asleep with Ashley's head laying on his right arm. Ashley believed this positioning was deliberate, so "he could feel [her] if [she] moved or something, because at that point it was only [her] ankles taped up." Ashley did not sleep but instead lay still beside Santos, trying not to move so that he would not "think [she] was trying to get away or trying to do something sneaky." Eventually, after Santos woke up, Ashley convinced him to let her go. He cut off the tape wrapping her ankles, and Ashley walked out to her car and left the parking lot, moving and driving slowly so Santos would not become worried that she would call the police.

Ashley, who was bruised, crying, and frightened, arrived back at her apartment and spoke with McCafferty.[4] McCafferty encouraged Ashley to call the police. After speaking with police officers, Ashley went to the hospital for a forensic

---

[3] In addition to aggravated kidnapping, the grand jury also charged Santos with the offense of aggravated sexual assault. *See* TEX. PENAL CODE § 22.021(a)(1)(A)(i). The jury found Santos not guilty of this offense.

[4] McCafferty testified that he was on the phone with Santos when Ashley arrived back at her apartment. Santos told McCafferty that he had gone through Ashley's phone and felt disrespected because he learned she was seeing other men. Santos admitted to McCafferty that he "beat her ass for it," that he "taped her up because she tried to leave," and that he "wrapped her up in a sheet so she would have all her attention on him, so she couldn't get away."

exam. The trial court admitted a copy of the report from this exam. The report contained a lightly redacted narrative about the assault.

A grand jury indicted Santos for the offense of aggravated kidnapping. The indictment alleged the following enhancement paragraphs:

> And it is further presented that, prior to the commission of the charged offense (hereafter styled the primary offense), on January 25, 2007, in cause number 107259701010 in the 209th District Court Houston of Harris County, Texas, the defendant was finally convicted of the second degree felony offense of Burglary of a Habitation.

> And it is further presented that, prior to the commission of the primary offense, on June 28, 2013, in cause number 133394301010 in the 209th District Court Houston of Harris County, Texas, the defendant was finally convicted of the third degree felony of Obstruction or Retaliation.

The jury found Santos guilty of the offense of aggravated kidnapping.

Before the punishment phase began, the State sought to abandon a portion of the first alleged enhancement paragraph. Specifically, the State requested that the trial court strike the last five digits—"01010"—in the cause number for the offense alleged in the first enhancement paragraph. Over defense counsel's objection that he did not have notice of the new cause number, the trial court agreed to grant the State's motion and ruled that "those last five digits will be stricken in the indictment." The court did not, however, physically alter the indictment.

Santos pleaded "not true" to both enhancement paragraphs. During the punishment phase, the trial court admitted a "pen packet" for a conviction for the

6

second-degree felony offense of "Burglary of a Habitation, With Intent to Commit Theft" from the 209th District Court of Harris County on January 25, 2007. The trial court cause number on the judgment of conviction was 1072597.

The jury found the allegations in both enhancement paragraphs true and assessed Santos's punishment at confinement for life. The trial court imposed sentence in open court on May 3, 2022.

Santos filed a notice of appeal on May 9, 2022. On May 31, Santos's appellate counsel filed a motion for new trial. Santos argued that his trial counsel rendered ineffective assistance by denying him his right to testify. He also argued that although he was not physically shackled during trial, the bailiff violated his presumption of innocence by standing close to Santos throughout the trial, "mirroring" all of Santos's movements, and inspecting the pens Santos used to write messages to his counsel. This motion was not supported by an affidavit. Santos requested an evidentiary hearing and provided a fiat for the court to complete upon scheduling the hearing.

The next day, June 1, the trial court signed the fiat, setting the motion for a hearing at 9:00 a.m. on July 20. It is undisputed that July 20 is 78 days after May 3, the date the court imposed Santos's sentence in open court.

At the hearing, the State objected to proceeding because July 20 was more than 75 days after the trial court imposed sentence in open court, and the trial court

7

had lost jurisdiction to rule on the motion for new trial. The trial court acknowledged that it erred in setting the hearing date, stating, "And that might be on me. I might have messed up on that. . . . So I should have [seen] the date and got you in here sooner." The court allowed Santos to make a proffer of testimony relevant to the grounds stated in the motion for new trial.

This appeal followed.

## Sufficiency of the Evidence

In his second issue, Santos argues that the State failed to present sufficient evidence that he had the specific intent to hold or secrete Ashley in a place where she was unlikely to be found. We address this issue first.

### A.    *Standard of Review*

In analyzing whether the evidence was sufficient to support a criminal conviction, we consider the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243–44 (Tex. Crim. App. 2019). Circumstantial evidence is as probative as direct evidence in establishing the guilt of the defendant, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

Our review includes all the evidence in the appellate record. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). The factfinder is the sole judge of "the credibility and weight to be attached to the testimony of witnesses." *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). When the record supports conflicting inferences from the evidence, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dunham*, 666 S.W.3d at 482; *see Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (noting that *Jackson* standard "tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts").

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Dobbs*, 434 S.W.3d at 170 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We may not use a "divide and conquer" strategy for evaluating sufficiency of the evidence; instead, we must "consider the cumulative force of all the evidence." *Murray*, 457 S.W.3d at 448.

We measure sufficiency of the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (quotations omitted). The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the

9

indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* (quotations omitted). The law "as authorized by the indictment" is the statutory elements of the offense as modified by the charging instrument. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012).

### B. *Intent to Hold or Secrete Complainant in a Place Where She Was Unlikely to be Found*

A defendant commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on the person. TEX. PENAL CODE § 20.04(a)(4). The Penal Code defines "abduct" as "to restrain a person with intent to prevent his liberation by" either:

(A) secreting or holding him in a place where he is not likely to be found; or

(B) using or threatening to use deadly force.

*Id.* § 20.01(2); *see also id.* § 20.01(1) (defining "restrain" as "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person"). An abduction "is a continuous, ongoing event," and there is "no time limit for an abduction." *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"Abduct" has two elements. *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009); *Bertram v. State*, 579 S.W.3d 661, 668 (Tex. App.—Houston [1st Dist.] 2019, no pet.). "First, the defendant must have restrained another, which is the *actus reus* requirement. Second, the defendant must have had the specific intent to prevent liberation, which is the *mens rea* requirement." *Laster*, 275 S.W.3d at 521. Secreting or holding another person in a place where she is unlikely to be found is part of the *mens rea* element of a kidnapping offense. *Id.*; *Brimage v. State*, 918 S.W.2d 466, 475 (Tex. Crim. App. 1994).

The State is not required to prove that the defendant actually secreted or held another in a place where the person was unlikely to be found. *Laster*, 275 S.W.3d at 521; *Brimage*, 918 S.W.2d at 476 ("It is therefore not necessary, as appellant argues, that the State prove a restraint accomplished by either secretion or deadly force."). Instead, the State must prove that the defendant restrained another person with the specific intent to prevent liberation by secreting or holding the person. *Laster*, 275 S.W.3d at 521; *Brimage*, 918 S.W.2d at 476. In other words, "[t]he offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found." *Laster*, 275 S.W.3d at 521; *Bertram*, 579 S.W.3d at 668.

The Court of Criminal Appeals has stated that a factfinder is not precluded from inferring that the defendant intended to secrete or hold the complainant "in a

11

place where she was unlikely to be found simply because he restrained her in public." *See Laster*, 275 S.W.3d at 522. The court further recognized that a rational factfinder can infer the requisite intent "when a defendant isolates a person from anyone who might be of assistance." *Id.* (citing *Fann v. State*, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985)); *see Megas v. State*, 68 S.W.3d 234, 240 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Bertram*, 579 S.W.3d at 669 (quoting *Laster*, 275 S.W.3d at 522).

In *Laster*, the eight-year-old complainant and her ten-year-old brother were walking home on a public sidewalk when they passed Laster walking toward them. *See* 275 S.W.3d at 515. As Laster passed the children, he grabbed the complainant's arm, put his arm around her waist, "and tried to pull her away." *Id.* at 515–16. The complainant's brother grabbed her hand "and a tug of war over [the complainant] ensued." *Id.* at 516. When a driver in the area honked a horn, Laster "abruptly let go" of the complainant and "continued to walk down the sidewalk." *Id.* In determining that sufficient evidence supported Laster's conviction for attempted aggravated kidnapping, the Court of Criminal Appeals concluded that the jury could have reasonably inferred from the testimony of the complainant and her brother that "by pulling [the complainant] away from her brother, the only person available to help her, Laster intended to hold or secrete [the complainant] in a place where she was unlikely to be found." *Id.* at 522.

Our Court has held similarly. In *Megas*, the defendant drove the complainant to a bar. *See* 68 S.W.3d at 237. They began to argue, and that argument grew more heated throughout the evening. *Id.* While driving with the complainant later that night, Megas pulled over onto the shoulder of the freeway. *Id.* A witness driving in the opposite direction on the freeway saw Megas punch and kick the complainant to prevent her from leaving the car. *Id.* A different witness saw the complainant "running away from the car toward the barricade while [Megas] was holding onto her with one hand and punching her with the other." *Id.* This witness pulled over to assist the complainant and honked her horn. *Id.* Megas stopped hitting the complainant, "dragged her into the car, and drove off." *Id.* Shortly thereafter, Megas swerved into a barricade. *Id.* The car flipped several times, and the complainant "was partially ejected from the car and killed when the car rolled on top of her." *Id.* Megas was convicted of felony murder, with kidnapping as the underlying felony. *Id.*

On appeal, Megas argued that the evidence was insufficient to support his conviction because the State did not prove that he had abducted the complainant by secreting or holding her in a place where she was not likely to be found. *Id.* at 238, 240. This Court disagreed, holding that "secreting the victim, or holding her in a place where she is not likely to be found, can be established when the defendant forces a victim into a car and moves the victim from one place to another." *Id.* at 240. We further reasoned that "a defendant can be operating a motor vehicle in

13

public while still intending to secret[e] or keep the victim from being found" because the offense of kidnapping is complete if the defendant *intends* to secrete or hold the complainant in a place where she is not likely to be found. *Id.* Additionally, keeping the complainant isolated from anyone who might be able to assist meets the secretion element of the offense. *Id.*

On these facts, we concluded that any reasonable jury could have found the element of abduction beyond a reasonable doubt. *Id.* Evidence that Megas "forc[ed the complainant] back into the car" after a witness attempted to render aid "supports the finding that [Megas] intended to secret[e] or hold [the complainant] in a place where she was not likely to be found" because Megas isolated the complainant "from contacting anyone who might have been of assistance." *Id.*

Santos argues that the State did not present sufficient evidence that he intended to secrete or hold Ashley in a place where she was unlikely to be found. He argues that, instead, "the evidence established that [Santos] and [Ashley] were where [Ashley] wanted to be (i.e. her car) or where her best friend knew she was and where she went nearly every day (i.e. [Santos's] home)." He points out that Ashley "mainly lived out of [her] car," and the State presented no evidence that Santos did anything to disguise Ashley's car. He also argues that, with respect to keeping Ashley in his bedroom at the banquet hall, Ashley visited him there nearly every day, she was pregnant with his child, she had at one point possibly kept toiletries at his home, and

14

McCafferty knew that Ashley had gone to the banquet hall that night. He contends that both the banquet hall and Ashley's car were places where she was likely to be found.

We disagree that the evidence is insufficient to establish that Santos intended to secrete or hold Ashley in a place where she was unlikely to be found. Both this Court and the Court of Criminal Appeals have held that a reasonable jury is not precluded from inferring that the defendant intended to secrete or hold the complainant in a place where she was unlikely to be found "simply because he restrained her in public." *See Laster*, 275 S.W.3d at 522; *Megas*, 68 S.W.3d at 240 ("[A] defendant can be operating a motor vehicle in public while still intending to secret[e] or keep the victim from being found."). Both this Court and the Court of Criminal Appeals have also held that a rational factfinder can infer the requisite intent when evidence exists that the defendant "isolates a person from anyone who might be of assistance." *Laster*, 275 S.W.3d at 522; *Megas*, 68 S.W.3d at 240; *see also Moreno v. State*, 413 S.W.3d 119, 132–33 (Tex. App.—San Antonio 2013, no pet.) (citing *Megas* and concluding that sufficient evidence existed to support abduction element of kidnapping when defendant held complainant in room at house where she had voluntarily gone on multiple occasions to buy drugs).

Here, after punching Ashley in the face and pushing her into the passenger seat of her car, Santos held her there for approximately one hour. Santos "didn't

15

want [Ashley] to sit up" in the passenger seat, and he "kept making sure [Ashley] was laid down." Ashley believed that Santos did this so that no passersby would be able to see that she was in the car. Santos then forced Ashley into his bedroom at the banquet hall, and he wrapped her wrists and ankles with tape to prevent her from leaving. Santos kept Ashley wrapped up in his bedroom all night before finally cutting the tape and allowing her to leave.

A reasonable factfinder could infer from the evidence presented at trial that by ensuring Ashley remained out of sight in her vehicle, Santos isolated her from anyone who might have been of assistance. *See Laster*, 275 S.W.3d at 522; *Megas*, 68 S.W.3d at 240. We therefore conclude that, when considering the evidence in the light most favorable to the verdict, a reasonable factfinder could determine that Santos intended to secrete or hold Ashley in a place where she was unlikely to be found, satisfying the "abduction" element of aggravated kidnapping. *See* TEX. PENAL CODE §§ 20.01(2)(A), 20.04(a)(4). We hold that sufficient evidence supports the jury's verdict.

We overrule Santos's second issue.

**Hearing on Motion for New Trial**

In his first issue, Santos argues that the trial court erred by allowing his motion for new trial to be overruled by operation of law without holding an evidentiary

16

hearing. Santos requests that we abate this appeal and remand to the trial court for the limited purpose of holding a hearing on his motion for new trial.

The purposes of a hearing on a motion for new trial are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009); *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). Such a hearing is not an absolute right. *Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 338. Nevertheless, a trial court abuses its discretion in failing to hold a hearing if the motion for new trial and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 338–39; *see* Tex. R. App. P. 21.2 ("A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record.").

If a defendant chooses to file a motion for new trial following conviction, he must do so no later than 30 days after the date the trial court imposes or suspends sentence in open court. Tex. R. App. P. 21.4(a). The defendant must then present the motion to the trial court within 10 days of the filing. Tex. R. App. P. 21.6; *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017) (per curiam) ("presenting" motion for new trial "means the defendant must give the trial court actual notice that

17

he timely filed a motion for new trial and requests a hearing"). The trial court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court. TEX. R. APP. P. 21.8(a). If the court does not rule on the motion within 75 days, the motion is overruled by operation of law. *See id.* Once a motion for new trial is overruled by operation of law, the trial court loses jurisdiction to rule upon it. *Montelongo v. State*, 623 S.W.3d 819, 823 (Tex. Crim. App. 2021).

Here, the trial court imposed Santos's sentence in open court on May 3, 2022. Santos timely filed a motion for new trial on May 31, and he requested an evidentiary hearing. The following day, June 1, the trial court signed the fiat attached to the motion and set the matter for hearing on July 20. It is undisputed that July 20 is 78 days after May 3, or three days after the motion was overruled by operation of law on the 75th day following imposition of sentence in open court. *See* TEX. R. APP. P. 21.8(a).

The parties agree that the trial court scheduled the hearing for a date after the date on which the motion was overruled by operation of law and the court lost jurisdiction to rule upon the motion. The State argues that Santos has failed to preserve his complaint about the trial court's failure to timely hold a hearing because he did not object to the untimely setting. The State also argues that Santos's failure to support his motion with an affidavit precludes any finding of error.

18

Assuming arguendo that Santos had no obligation to object to the trial court's untimely setting and therefore this issue is preserved for appellate review, we hold that the trial court did not err by failing to hold a hearing because Santos did not establish that he was entitled to a hearing on the motion. When the grounds in a motion for new trial are based on matters not already in the record, the Court of Criminal Appeals requires that the motion "be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim." *Smith*, 286 S.W.3d at 339; *Bahm v. State*, 219 S.W.3d 391, 395 (Tex. Crim. App. 2007). The affidavit need not establish a prima facie case or "reflect every component legally required to establish relief" as long as a "fair reading" of the affidavit "gives rise to reasonable grounds in support of the claim." *Smith*, 286 S.W.3d at 339 (quotations omitted). "If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required." *Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 339.

Santos argues that a hearing on his motion for new trial was necessary because the grounds that he asserted raised matters not determinable from the trial record. He also acknowledges on appeal that he did not support his motion for new trial with any affidavits. He argues that his appellate counsel could not obtain an affidavit from

him because he was incarcerated at the time,[5] but he cites to no authority holding that this is an exception to the Court of Criminal Appeals' longstanding precedent requiring motions for new trial raising grounds not determinable from the record to be supported by an affidavit, which need not be executed by the defendant.[6] *See Smith*, 286 S.W.3d at 339 ("Thus we require, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant *or someone else*, specifically setting out the factual basis for the claim.") (emphasis added); *Reyes v. State*, 849

---

[5]   An incarcerated defendant can use an unsworn declaration that complies with Civil Practice and Remedies Code section 132.001 in lieu of a verification or affidavit supporting a motion for new trial. *Bahm v. State*, 219 S.W.3d 391, 393–94 (Tex. Crim. App. 2007); *Owens v. State*, 763 S.W.2d 489, 490–91 (Tex. App.—Dallas 1988, pet. ref'd); *see* TEX. CIV. PRAC. & REM. CODE § 132.001(a) (providing that unsworn declaration may be used in lieu of affidavit), (c) (providing that unsworn declaration must be in writing and subscribed "as true under penalty of perjury"), (e) (providing jurat form for inmate declarations); *Dominguez v. State*, 441 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("The inclusion of the phrase 'under penalty of perjury' is the key to allowing an unsworn declaration to replace an affidavit."); *see also Grant v. State*, 172 S.W.3d 98, 101 (Tex. App.—Texarkana 2005, no pet.) (noting that "[e]ven if it is difficult to obtain a verification of a statement for one confined," other methods, such as unsworn declaration, can be used). Santos did not submit an unsworn declaration with his motion for new trial.

[6]   In his request for an evidentiary hearing, Santos stated, "Mr. Santos will testify in this hearing and so will his mother who was present for much of the trial. There may be other witnesses who testify to the events." Neither Santos's mother nor any other potential witness provided an affidavit or unsworn declaration in support of the motion for new trial.

20

S.W.2d 812, 816 (Tex. Crim. App. 1993) (stating that affidavit requirement is "a prerequisite to obtaining a hearing" and "a matter of pleading") (quotations omitted).

Without an affidavit setting out the factual basis for the claims, the trial court was not required to hold a hearing on Santos's motion for new trial. *See Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 339. We hold that Santos has not established that the trial court abused its discretion by failing to hold a hearing on his motion for new trial.

We overrule Santos's first issue.

### Notice of Enhancement Paragraph

In his third issue, Santos argues that the trial court erred by allowing the State to proceed on the first alleged enhancement paragraph because the State did not provide adequate notice that it intended to use this enhancement.

A defendant is entitled to notice that a prior conviction will be used for enhancement. *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997); *Sears v. State*, 91 S.W.3d 451, 454 (Tex. App.—Beaumont 2002, no pet.) ("The accused has a right to be advised that a greater penalty is to be sought."). It is not necessary for the State to allege enhancements "with the same particularity as must be used in charging the original offense." *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978). However, because the defendant "is entitled to proper notice of any prior conviction alleged for enhancement of punishment," the defendant "is entitled

to a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question whether he is the convict named therein." *Id.* (citation and quotation omitted). Generally, an enhancement allegation "should include the court in which the conviction was obtained, the time of the conviction and the nature of the offense." *Id.* at 876.

The State must therefore plead a prior conviction to be used as an enhancement "in some form," but it need not plead enhancements in the indictment, "although it is permissible and perhaps preferable to do so." *Brooks*, 957 S.W.2d at 34 (concluding that State's motion for leave to amend indictment to add allegations of enhancement paragraph and trial court's order granting leave provided adequate notice to defendant even though indictment itself was not physically amended). This pleading requirement is "a right to notice rooted in due process." *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006).

A defendant should receive sufficient notice of an enhancement such that he has an opportunity to prepare a defense to the enhancement. *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010); *Villescas*, 189 S.W.3d at 294 ("The ultimate question is whether constitutionally adequate notice was given."). The Court of Criminal Appeals has not established that notice must be given within a particular time frame, and the court has declined to hold that "the relevant time period for determining proper notice is the period before trial." *See Villescas*, 189

S.W.3d at 294 (citing *Oyler v. Boles*, 368 U.S. 448 (1962), for proposition that due process does not require that notice of enhancements be given before guilt-innocence phase of trial begins). In *Villescas*, the court concluded that "when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." *Id.* We must look to the record to determine whether the defendant's defense was impaired by the timing of the State's notice. *Pelache*, 324 S.W.3d at 577.

The grand jury indicted Santos for aggravated kidnapping on May 30, 2018. The indictment alleged the following two enhancement paragraphs:

> And it is further presented that, prior to the commission of the charged offense (hereafter styled the primary offense), on January 25, 2007, in cause number 107259701010 in the 209th District Court Houston of Harris County, Texas, the defendant was finally convicted of the second degree felony offense of Burglary of a Habitation.

> And it is further presented that, prior to the commission of the primary offense, on June 28, 2013, in cause number 133394301010 in the 209th District Court Houston of Harris County, Texas, the defendant was finally convicted of the third degree felony of Obstruction or Retaliation.

Before trial, the State provided Santos with several notices of extraneous offenses that it intended to introduce at trial. Both prior offenses alleged as enhancements were listed in these notices.

At the start of the punishment phase, the State moved to abandon the last five digits of the cause number for the prior offense alleged in the first enhancement paragraph. The prosecutor argued:

> In the first enhancement paragraph the cause number listed in the indictment was 107259701010. As the Judge is probably aware, Harris County in their older—even if you look at criminal histories with their older convictions, they've added their new style of cause number.
>
> So what's reflected in the indictment is not necessarily what's reflected in the actual judgment. That is surplusage. [Code of Criminal Procedure] Article 28.10 doesn't apply, according to case law, and the State's permitted to move to abandon that portion of the surplusage of the indictment prior to the commencement of punishment. So we would ask to strike the 01010 before the enhancement paragraph's read to the jury.

Defense counsel objected. Counsel argued that the judgment for the prior conviction had been in the pretrial discovery document manager, so the State knew the cause number for the prior case. There was "no reason that they couldn't have amended [the indictment] prior." Defense counsel agreed that the State is not required to plead enhancement paragraphs in the indictment, but the State still must give adequate notice that it was seeking an enhanced punishment. Counsel argued, "I didn't have notice of the cause number for the judgment that they wanted to try to prove today in the enhancement paragraphs."

Ultimately, the trial court granted the State's motion, but it did not physically alter the indictment to remove the "01010" from the cause number in the first enhancement paragraph. Before the jury, the State read the enhancement paragraph

24

without the "01010." The trial court also admitted the "pen packet" that corresponded with the first enhancement paragraph.[7] The cause number at the top of the judgment of conviction stated "1072597." The judgment listed the court as the 209th District Court of Harris County, stated that the date of judgment was January 25, 2007, named the offense as "Burglary of a Habitation, With Intent to Commit Theft," and listed the degree of offense as a second-degree felony. The jury found the allegations in this enhancement paragraph true.

The first enhancement paragraph in the indictment alleged the nature of the offense (burglary of a habitation), the degree of the offense (second-degree felony), the date of conviction (January 25, 2007), the court ("209th District Court Houston"), and the county (Harris County, Texas). All this information is correct. *See Hollins*, 571 S.W.2d at 876 ("It has been frequently held that in alleging a prior conviction for enhancement of punishment the allegations should include the court in which the conviction was obtained, the time of the conviction and the nature of the offense."). The first seven digits of the cause number alleged in the first enhancement paragraph match the cause number on the judgment for this offense introduced into evidence, but the cause number alleged in the indictment contains five additional digits—"01010"—at the end.

---

[7] Before trial, defense counsel signed an acknowledgment that the State had provided a list of items during discovery. The items included "PEN PAC Request - #107259701010 Burglary of a Habitation."

25

We conclude that despite the discrepancy in the cause numbers, the first enhancement paragraph as alleged in the indictment was sufficient to provide Santos with "a description of the judgment of former conviction that will enable him to find the record and make preparation for a trial of the question whether he is the convict named therein." *See id.* at 875 (quotation omitted). We hold that the trial court did not err by determining that Santos had sufficient notice of the first alleged enhancement paragraph.

We overrule Santos's third issue.

**Material Variance**

Finally, in his fourth issue, Santos argues that after the trial court allowed the State to abandon five digits in the cause number of the prior conviction alleged in the first enhancement paragraph, the indictment was not physically amended, leading to a material variance between the cause number in the enhancement paragraph as alleged in the indictment and the cause number that was proved at trial.

A variance occurs when there is a discrepancy between the allegations in the indictment and the proof offered at trial. *Byrd*, 336 S.W.3d at 246; *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar*, 46 S.W.3d at 246. Not all variances constitute reversible error; instead, only material variances

26

are "fatal." *See id.* at 249, 257. A variance that is not prejudicial to a defendant's substantial rights is immaterial and does not require reversal. *Id.* at 247–48, 257. In determining whether a defendant's substantial rights have been prejudiced, we consider two questions: (1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial; and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.* at 248 (quotation omitted).

Both the Court of Criminal Appeals and this Court have held that a variance between the cause number alleged in an enhancement paragraph and the cause number proved at trial is not necessarily a fatal variance. The Court of Criminal Appeals has stated that "[t]he object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice." *Plessinger v. State*, 536 S.W.2d 380, 381 (Tex. Crim. App. 1976) (citation omitted); *see Freda v. State*, 704 S.W.2d 41, 42–43 (Tex. Crim. App. 1986) (citing numerous Court of Criminal Appeals and intermediate appellate court cases holding that discrepancies in style of prior offense, cause number, type of charging instrument, name of court, and date prior conviction became final did not constitute material variance). "It seems logical, therefore, that alleging the wrong cause number but the right court, county, date, and offense

produces no fatal variance." *Cole v. State*, 611 S.W.2d 79, 82 (Tex. Crim. App. 1981); *Simmons v. State*, 288 S.W.3d 72, 80 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[V]ariances between an indictment and the proof of cause numbers, courts, and dates of conviction in enhancement paragraphs have been held not to be material.").

As stated above, the first enhancement paragraph in the indictment listed the cause number for Santos's prior conviction for burglary of a habitation as "107259701010." After the State moved to abandon the last five digits of this cause number, the trial court admitted a pen packet for a burglary of a habitation conviction that listed the cause number as "1072597." Both the indictment and the judgment of conviction stated that the convicting court was the 209th District Court of Harris County, the date of conviction was January 25, 2007, and the degree of the offense was a second-degree felony. The indictment called the prior offense "Burglary of a Habitation," while the judgment of conviction was more specific and stated "Burglary of a Habitation, With Intent to Commit Theft."

The State's proof at trial of the nature of the prior offense, the degree of the offense, the date of conviction, the convicting court, and the county matched the allegations in the indictment. The discrepancy between the cause number alleged in the indictment and the cause number in the judgment of conviction admitted at trial would not have prevented Santos from finding the record of the prior conviction and

28

presenting a defense. *See Cole*, 611 S.W.2d at 82; *see also Chavis v. State*, 177 S.W.3d 308, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding that variance in number of convicting court was not material because enhancement paragraphs in indictment and jury charge stated same cause number, offense, and date of judgment, so defendant would not have been prevented from locating record of prior conviction). We therefore hold that the variance between the first enhancement paragraph alleged in the indictment and the proof at trial was not a material variance. *See Cole*, 611 S.W.2d at 82; *Simmons*, 288 S.W.3d at 80.

We overrule Santos's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).